IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 24-50029-MMP |
| JIMMY RAY LEWIS, JR., and wife, | § | |
| DORINA JOY LEWIS | § | |
| | § | |
| DEBTORS. | § | CHAPTER 11 |

## JIMMY RAY LEWIS, JR., AND WIFE, DORINA JOY LEWIS' SUBCHAPTER V CHAPTER 11 PLAN OF REORGANIZATION

/s/ William R. Davis, Jr.
WILLIAM R. DAVIS, JR.
LANGLEY & BANACK, INCORPORATED
745 E. Mulberry, Suite 700
San Antonio, TX 78212
(210) 736-6600 - Telephone
(210) 735-6889 - Telecopier
wrdavis@langleybanack.com

Attorneys for Debtors

Dated: April 3, 2024

# ARTICLE I
## SECTION 1190(1) BACKGROUND INFORMATION

### A. Debtors' Business Operations

The Debtors' business consists of development construction - land preparation for mobile homes, land clearing and septic installation.

### B. Debtors' Financial Crisis

The Debtors ended up in bankruptcy protection as a result of a dramatic downturn in the housing market as a result of a spike in mortgage interest rates. That was combined with mechanical problems that the Debtors experienced with some of their trucks and equipment.

### C. Debtors' Bankruptcy Filing

The Debtors filed their voluntary petition under Subchapter V of Chapter 11 of the Bankruptcy Code with this court on January 4, 2024 (the "Petition Date"). The Debtors remain in possession of their property and continue to manage their affairs and operate their business as a Debtors in Possession pursuant to 11 U.S.C. §§1107 and 1108.

Brad Odell was appointed and serves as the Debtors' Subchapter V Trustee pursuant to Bankruptcy Code Section 1183 (the "Trustee").

The Debtors filed this case to reorganize their financial affairs . As a part of the reorganization process, the Debtors have reviewed their operations, including a review of all vehicles and equipment to determine if any equipment should be surrendered. The Debtors have determined to surrender a tack wagon (Wells Fargo), a mulcher (Kubota) and a jack hammer (Kubota).

A. Liquidation Analysis and Plan Projections are attached hereto as Exhibit A and Exhibit B respectively, and constitute Plan Documents as contemplated in Article 11.B.

# ARTICLE II
# DEFINITIONS AND RULES OF CONSTRUCTION

## A.    Defined Terms

In addition to such other terms as are defined in other sections of this Plan, the following terms have the meanings set forth below (such meanings to be equally applicable to both the singular and plural, masculine and feminine forms of the terms defined).

2.1    "Administrative Bar Date" means the deadline to file Claims for Allowance as an Administrative Expense set forth in Section 4.1(c) of the Plan.

2.2.    "Administrative Expense" means any cost or expense of administration of the Debtor's Chapter 11 case allowed under Subsections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Estate of the Debtor, any actual and necessary expenses of operating the business of the Debtor, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under Section 330 and 503 of the Bankruptcy Code, and any fees or charges assessed against the Estate of the Debtor under Section 1930, Chapter 123 of Title 28 of the United States Code.

2.3    "Allow" or "Allowance" when used with respect to a Claim, means the process of determining whether a Claim is to be Allowed pursuant to this Plan.

2.4    "Allowed" when used with respect to a Claim (other than an Administrative Expense), means a Claim (a) to the extent it is not Contested; or (b) a Contested Claim, proof of which was filed timely with the Bankruptcy Court, and (I) as to which no Objection was filed by the Objection Deadline, or (ii) as to which an Objection was filed by the Objection Deadline, to the extent, if any, such Claim is ultimately followed by a Final Order, provided, however, if a Claim is to be determined by Final Order of such other forum and allowed by Final Order of the Bankruptcy Court, With respect to an Administrative Expense (other than Ordinary Course Claims), such Claims will be Allowed when a Final order has been entered by the Bankruptcy Court allowing such Administrative Expense Claim.

2.5    "Assets" means all right, title, and interest in and to all property of every type or nature owned or claimed by the Debtor or the Estate as of the Effective Date, whether real or personal, tangible or intangible, and wherever located, and including, but not limited to, all property of th Estate as defined in Section 541 and, as applicable, section 1186 of the Bankruptcy Code. Without limiting the generality of the foregoing, this will include all of the following: Estate Claims, Avoidance Actions, Estate Defenses, Estate Cash, Estate Accounts Receivable, Estate Insurance and Estate Contracts.

2.6    "Avoidance Action" means a cause of action and rights assertable by a Debtor against any Person, including but not limited to any Creditor, pursuant to Chapter 5 of the Bankruptcy Code, including without limitation, actions brought, or which may be brought, under Sections 542, 543, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code, and including all causes of action, rights and

remedies assertable by the Estate pursuant to Section 544 of the Bankruptcy Code.

2.7    "Ballot" means the form of ballot provided to holders of Claims or Interests entitled to vote pursuant to Bankruptcy Rule 3017(d), by which each such holder may accept or reject the Plan.

2.8    "Bankruptcy Case" means Case No. 24-50029 before the United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

2.9    "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended and codified at Title 11 of the United States Code.

2.10    "Bankruptcy Court" means the United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

2.11    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time-to-time, including all applicable local rules of the Bankruptcy Court, and any reference to a specific rule is a "Bankruptcy Rule".

2.12    "Bar Date" is the date established by the Bankruptcy Court, including through any standing order, for filing proof of claim or proofs of interest which, in this Bankruptcy Case, was February 6, 2023, provided, however, that if the Bankruptcy Court has ordered an extension of the time by which a particular creditor may file a proof of claim or proof of interest, the date set with respect to such Creditor will be the Bar Date with respect to such Creditor, but only as to such Creditor.

2.13    "Beneficiary" means any Person that is the holder of an Allowed Claim entitled to receive Distributions from the Debtor pursuant to this Plan.

2.14    "Claim" means (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fox, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, legal equitable, secured or unsecured, or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, secured or unsecured.

2.15    "Claimant" means the holder of a Claim.

2.16    "Class" means a category or group of holders of Claims or Interests as designated in Article III of the Plan.

2.17    "Collateral" means any asset subject to a valid and enforceable Lien to secure payment of a Claim, including any right of offset asserted against any asset.

2.18   "Confirmation Date" means the date of entry of the Confirmation Order.

2.19   "Confirmation Hearing"means the hearing, as it may be continued from time-to-time, conducted by the Bankruptcy Court pursuant to Section 1128 of the Bankruptcy Code and Bankruptcy Rule 3020(b) to consider confirmation of the Plan, as the same may be amended, modified or supplemented.

2.20   "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

2.21   "Contested" when used with respect to a Claim, means a Claim: (a) that is listed in the Schedules of a Debtor as disputed, contingent, and/or unliquidated, or in the amount of "$0.00" or "Unknown"; (b) that is listed in the Schedules of a Debtor as undisputed, liquidated, and not contingent and as to which a proof of claim has been filed with the Bankruptcy court, to the extent the proof of claim amount exceeds the scheduled amount; (c) that is not listed in the Schedules of a Debtor; (d) as to which an Objection has been or may be timely filed and which Claim has not been allowed by a Final Order; or (e) for which the proof of claim is filed after the applicable Bar Date; provided, however, that all Claims will be deemed as contested until the applicable Objection Deadline has passed. In addition, any claim which is subject to an objection or other pleading seeking either subordination (whether equitable or otherwise) or recharacterization of such claim, including pursuant to Section 510(c) of the Bankruptcy Code will likewise be deemed to constitute a contested claim until such Objection has been resolved by a Final Order.

2.22   "Creditor" has the same meaning as in Section 101(10) of the Bankruptcy Code.

2.23   "Cure Claim" will refer to a Claim under Section 365(b) of the Bankruptcy Code (a) for the payment or other performance required to cure any existing default under a Executory Contract or (b) for any actual pecuniary loss resulting from any such default under a Executory Contract.

2.24   "Debtors" means Jimmy Ray Lewis, Jr., and wife, Dorina Joy Lewis.

2.25   "Disallowed" when used with respect to all or any part of a Claim or Interest, means that portion of a Claim or Interest to which an Objection or Motion to disallow has been sustained b a Final Order or, as to any Contested Claim, any portion thereof which is not allowed by a Final Order of the Bankruptcy Court.

2.26   "Disposable Income" has the meaning provided for such term in Section 1191(d) of the Bankruptcy Code.

2.27   "Distribution" will refer to and include any distribution of any property pursuant to this Plan.

2.28   "Effective Date" means the first business day which is thirty (30) days after the Confirmation Date if the Confirmation Order is not stayed or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay which is at least fourteen (14) business days after the Confirmation Date, and upon which all conditions to the effectiveness of the Plan set forth in Article XII below are satisfied.

2.29   "Equitable Subordination" will be broadly construed and will encompass any right or remedy to equitably subordinate or recharacterize as equity any Claim, including without limitation any such right or remedy pursuant to Section 510(c) of the Bankruptcy Code.

2.30   "Estate" means the Debtor's bankruptcy estate in the Bankruptcy Case.

2.31   "Estate Claims" means any and all Claims or causes of action or rights of action held by an Estate against any person, whether based on a contract, applicable tort or common law, or any law, statute or regulation of any governmental body or entity, including without limitation all Avoidance Actions, causes of action, rights of action or any right to recover money or property from any person, as well as all legal and equitable rights and remedies incident to any of the foregoing.  Estate Claims will also include all applicable privileges in relation thereto, including the attorney-client privilege and the work produce privilege.

2.32   "Estate Defenses" means any and all defenses, affirmative defenses, counterclaims, or rights of offset or recoupment by an Estate against any Person, including without limitation all affirmative defenses referenced Fed. R. Civ. Pr. 8(c).  Estate Defenses will also include all rights and remedies for Equitable Subordination.  Estate Defenses will also include all applicable privileges with respect thereto, including the attorney-client privilege and work product privilege.

2.33   "Executory Contract" refers to any executory contract or unexpired lease which is subject to Section 365 of the Bankruptcy Code.

2.34   "Estate Professional" means those persons employed pursuant to an order of the Bankruptcy Court in accordance with Sections 327, 328 and 1103 of the Bankruptcy Code or which are entitled to compensation or reimbursement pursuant to Sections 503(b)(3)(D) or 506(b) of the Bankruptcy Code.

2.35   "Final Decree" means an order or judgment of the Bankruptcy Court or any other court or adjudicative body, as to which the time to appeal or seek rehearing or petition for certiorari has expired, and which such order or judgment will no longer be subject to appeal, rehearing, or certiorari proceeding.

2.36   "Final Order" means an order or judgment of the Bankruptcy Court or any other court of adjudicative body, as to which the time to appeal or seek rehearing or petition for certiorari has expired, and which such order or judgment will no longer be subject to appeal, rehearing, or certiorari proceeding.

2.37 "General Unsecured Claim" means a Claim which is not a Secured Claim, is not an Administrative Expense and is not entitled to priority of distribution pursuant to Section 507 of the Bankruptcy Code, and includes any rejection claims pursuant to Section 502(g) of the Bankruptcy Code.

2.38 "Governmental Bar Date" means June 20, 2024,, the date by which governmental units must file proofs of claim pursuant to Section 502(b)(9) and Bankruptcy Rule 3002(c)(1).

2.39 "Initial Distribution Date" when used with respect to any Contested Claim or Rejection Claim, means the later of (I) the first Business Day at least thirty (30) days after the date on which any such Contested Claim or Rejection Claim becomes an Allowed Claim, or (ii) if the payment terms of Article V of this Plan applicable to each such Claim specify a different ate, then the date as calculated pursuant to the terms of Article V of this Plan applicable to each such Claim. The Initial Distribution Date will be separately determined with respect to each Contested Claim or Rejection Claim based upon the date each such claim became an Allowed Claim.

2.40 "Interest" means any equity interest, as that term if defined in Section 101(16) of the Bankruptcy Code, in the Debtor.

2.41 "Lien" means any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset, including any right of offset asserted against any asset.

2.42 "Objection" will include (a) an Objection to the allowance of a Claim interposed by any party entitled to do so within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, and (b) as to any Taxing Authority, will include a proceeding commenced under Section 505 of the Bankruptcy Code to determine the legality or amount of any tax. Any pleading seeking to subordinate or recharacterize a Claim will also constitute an Objection.

2.43 "Objection Deadline" means the later of (a) sixty (60) days following the Effective Date, unless otherwise extended by order of the Bankruptcy Court, or (b) as to any Rejection Claim filed after the Effective Date, sixty (60) days after the date on which the proof of claim reflecting the Rejection Claim is filed.

2.44 "Petition Date" means January 4, 2024.

2.45 "Plan" means this Plan of Reorganization for the Debtors, either in its present form or as it may be altered, amended, modified, or supplemented from time-to-time.

2.46 "Plan Injunction" has the definition provided in Section 13.3 of this Plan.

2.47 "Priority Non-Tax Claim" means any claim that is entitled to priority in payment pursuant to Sections 507(a)4), (5), (6) or (7) of the Bankruptcy Code and that is not an Administrative Expense Claim or a Priority Tax Claim.

2.48    "Priority Tax Claim" means a claim entitled to priority of payment pursuant to Section 507(a)(8) of the Bankruptcy Code, other than any Property Tax Claims.

2.49    "Property Taxes" means such taxes assessed by any Taxing Authority against any property of the Debtor based on the value thereof, as allowed by applicable state and local law.

2.50    "Pro Rata Percentage" means, as to the holder of a specific claim, the ratio that the amount of such holder's claim bears to the aggregate amount of all claims. Until a Contested Claim is deemed allowed, the full amount of the Debtor's Disposable Income will solely be distributed to those certain Allowed Claims in accordance with Article V.

2.51    "Rejection Claim" means a Claim arising under Section 502(g) of the Bankruptcy Code as a consequence of the rejection of any Executory Contract.

2.52    "Reorganized Debtors" means Jimmy Ray Lewis, Jr., and wife, Dorina Joy Lewis, as reorganized pursuant to and under the Plan or any successor thereto, as set forth in the Plan following the Effective Date of this Plan.

2.53    "Schedules" means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtors as required by Section 521 of the Bankruptcy Code including any amendments and attachments thereto.

2.54    "Secured Claim" means (a) a Claim secured by a Lien against an Asset, to the extent such Lien is valid, perfected and enforceable under applicable non-bankruptcy law and is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, and which is duly Allowed, but only to the extent that such Claim does not exceed the value of the Assets which the Bankruptcy Court finds are valid security for such Claim (except, if the holder of such Claim makes the election provided for in Section 1111(b)(2) of the Bankruptcy Code, the entire amount of the Claim will be a Secured Claim), and (b) any valid and enforceable right of offset asserted against a Debtor or any Asset.

2.55    "Subchapter V Trustee" means Brad Odell.

2.56    "Subchapter V Trustee Fees" means those fees paid or to be paid to the Subchapter V Trustee pursuant to Section 330 of the Bankruptcy Code.

2.57    "Subordinated Claim" means a Claim which is eligible for payment or Distribution only after all other unsubordinated Allowed Claims have been paid in full and any other Claim which is subordinated by a Final Order, whether due to Equitable Subordination, agreement with a Claimant, or other subordination event.

2.58    "Substantial Consummation" means the day on which the Estate's Assets are vested in the Reorganized Debtor.

2.59    "Taxing Authority" will include the United States Internal Revenue Service and State of Texas or any subdivision thereof, including without limitation any political subdivision of the State of Texas assessing ad valorem taxes against any of the Assets.

2.60    "Unclaimed Property" means any Cash, Distribution, payment or any other property unclaimed for a period of one hundred twenty (120) days after the date of the applicable Distribution, or such longer period which the Debtor may fix in the exercise of its good faith business judgment.

2.61    "U.S. Trustee" means the office of the U.S. Trustee for Region 7.

**B.      Rules of Interpretation and Construction of Terms**

2.62    Unless otherwise specified, all section, Article and exhibit references in the Plan are to the respective section in, Article of, or exhibit to, the Plan as the same may be amended, supplemented, or otherwise modified from time-to-time.  The headings in the Plan are for convenience and reference only and will not limit or otherwise affect the provisions or the interpretation hereof.

2.63    Whenever from the context it appears appropriate, each term stated in either the singular or plural includes both singular and plural, and pronouns stated in masculine, feminine or neuter form will include all of the masculine, feminine or neuter form.

2.64    The rules of construction set forth in Section 102 of the Bankruptcy Code will apply to this Plan, the Confirmation Order and all Plan Documents.

2.65    All Exhibits to the Plan and all Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein.  Certain Plan Documents may be filed with the Clerk of the Bankruptcy Court in prior to the commencement of the Confirmation Hearing. Holders of Claims and Interests may obtain a copy of the Plan Documents, once filed, by a written request sent to the following address: Langley & Banack, Inc., Attention: William R. Davis, Jr., 745 E. Mulberry Avenue, Suite 700, San Antonio, TX 78212, or via e-mail to wrdavis@langleybanack.com.

2.66    Reference herein to any agreement, contract, instrument or other document in this Plan will refer to such agreement, contract, instrument or document as amended, supplemented or modified.

**ARTICLE III**

**CLASSIFICATION OF CLAIMS AND INTERESTS**

3.1    The following is a designation of the Classes or Claims and Interests pursuant to this Plan. A Claim will be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class.  A Claim is included in a particular Class only to the extend that the Claim is an Allowed Claim within that Class.

3.2 <u>Claims and Interests</u>. Claims and Interests against or in the Debtor are classified under this Plan as follows:

(a)     <u>Class 1</u> - Secured tax claims for real and personal property taxes (Leon and Medina County and related tax entities).

(b)     <u>Class 2</u> - Secured claim of A+ Federal C.U.

(c)     <u>Class 3</u> - Secured claim of PNC Bank.

(d)     <u>Class 4</u> - Secured claim of PNC Bank.

(e)     <u>Class 5</u> - Secured claim of PNC Bank.

(f)     <u>Class 6</u> - Kerr County FCU.

(g)     <u>Class 7</u> - Kubota Credit Corporate USA.

(h)     <u>Class 8</u> - Kubota Credit Corporate USA.

(i)     <u>Class 9</u> - Kubota Credit Corporate USA.

(j)     <u>Class 10</u> - Kubota Credit Corporate USA.

(k)     <u>Class 11</u> - Kubota Credit Corporate USA.

(l)     <u>Class 12</u> - Mahindra Finance USA, LLC.

(m)     <u>Class 13</u> - Performance Finance.

(n)     <u>Class 14</u> - Randolph-Brooks FCU.

(o)     <u>Class 15</u> - Security Service FCU.

(p)     <u>Class 16</u> - Sheffield Financial.

(q)     <u>Class 17</u> - Synchrony/Polaris Consumer.

(r)     <u>Class 18</u> - Wells Fargo Equipment Finance, Inc.

(s)     <u>Class 19</u> - Priority Unsecured claims of the Internal Revenue Service.

(t)     <u>Class 20</u> - Claims of general unsecured creditors.

(u)    Class 21 - Claims of the Debtors, Jimmy Ray Lewis, Jr., and wife, Dorina Joy Lewis.

3.3    Impaired Classes of Claims and Interests. Classes 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17 and 20 impaired and entitled to vote on the Plan. Classes 1, 11, 18, 19 and 21 are unimpaired and ineligible to vote on the Plan.

3.4    Impairment of Classification Controversies. If a controversy arises as to the classification of any Claim or Interest, or as to whether any Class of Claims or Interests is impaired under the Plan, the Bankruptcy Court will determine such controversy as a part of the confirmation process.


## ARTICLE IV
## TREATMENT OF UNCLASSIFIED CLAIMS

4.1    Administrative expenses.

(a)    The Debtors will pay, in accordance with the ordinary business terms applicable to such expense or cost, the reasonable and ordinary expenses incurred in operating the Debtors' business or administering the Estate before the Effective Date ("Ordinary Course Claims"). The remaining provisions of this Section 4.1 will not apply to the Ordinary Course Claims, except that if there is a dispute relating to any such Ordinary Course Claim, the Debtors may move the Bankruptcy Court to apply the provisions of Article X below relating to Contested Claims and require the holder of the Contested Ordering Course Claim to assert such Claim through this Bankruptcy Case.

(b)    Each holder of an Allowed Administrative Expense (other than Ordinary Course Claims and Administrative Expense Claims by Estate Professionals), will receive (I) the amount of such holder's Allowed Administrative Expense in one Cash payment on the later of the Effective Date or the thirtieth (30th) Business Day after such Administrative Expense becomes an Allowed Administrative Expense, (ii) periodic payments totaling the amount of such holder's Allowed Administrative Expense according to the Plan Projections as permitted under 11 U.S.C. §1191(e), or (iii) such other treatment as may be agreed to in writing by such Administrative Expense Creditor and the Debtors, or as otherwise ordered by the Bankruptcy Court.

(c)    Unless the Bankruptcy Court orders to the contrary or the Debtors agree to the contrary in writing, the holder of a Claim for an Administrative Expense, other than such a Claim by an Estate Professional, an Ordinary Course Claim, or an Administrative Expense which is already Allowed, will file with the Bankruptcy Court and serve upon the Debtors and their counsel a written notice of such Claim for an Administrative Expense within thirty (30) days after the Effective Date. This deadline is the Administrative Bar Date. Such notice will include at a minimum: (I) the name, address, telephone number and fax number (if applicable) or e-mail address of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim. Failure to timely and properly file and serve such notice by or on the Administrative Bar Date will result in such Claim for an Administrative Expense being

forever barred from receiving any Distribution.

(d)     A Claim for an Administrative Expense, for which a proper notice was filed and served under Subsection 4.1(c) above, will become an Allowed Administrative Expense if no Objection is filed within thirty (30) days from the filing and service of such notice. If a timely Objection is filed, the Claim will become an Allowed Administrative Expense only to the extent allowed by a Final Order from the Court.

(e)     The proceedings contained in Subsections 4.1(a), (c) and (d) above will not apply to Administrative Expense Claims asserted by Estate Professionals, who will each file and submit an appropriate final fee application to the Bankruptcy Court no later than thirty (30) days after the Effective Date.

(f)     A Claim for an Administrative Expense by an Estate Professional for which a Final Fee Application has been properly filed and served will become an Allowed Administrative Expense only to the extent allowed by Final Order and, if so Allowed, will be paid in full either on the Effective Date from any remaining funds the Estate Professional holds on retainer after entry of such Final Order, or, to the extent the Estate Professional's Allowed Administrative Expense Claim exceeds the funds the Estate Professional holds on retainer, any unpaid Allowed Administrative Expense Claim amount remaining due after application of all available retainer funds will be paid after the remaining due after application of all available retainer funds will be paid as agreed to between the Debtors and Applicant.

(g)     Professional fees and expenses to any Estate Professional incurred on or after the Effective Date may be paid by the Debtors without necessity of application to or order by the Bankruptcy Court.

(h)     If the Debtors assert any Estate Claims as counterclaims or defenses to a Claim for an Administrative Expense, the Administrative Expense Claim will be determined through an adversary proceeding before the Bankruptcy Court. The Bankruptcy Court has exclusive jurisdiction to adjudicate and Allow all Claims for any Administrative Expense.

4.2     <u>Subchapter V Trustee's Fees</u>. The Debtors will pay the Subchapter V Trustee Fees incurred pursuant to Sections 1183 and 330 of the Bankruptcy Code which are due pursuant to a Final Order granting the Subchapter V Trustee Fees entered by the Bankruptcy Court. Such fees will be paid either upon approval by the Bankruptcy Court or by agreement between the Debtors and the Subchapter V Trustee.

# ARTICLE V
## TREATMENT OF CLAIMS AND INTERESTS

Claims and interests are classified by priority or type. The treatment described below will apply to all Claims or Interests of the given Class against or in the Debtors. Except as specifically provided below.

5.1    Class 1. Consists of the real and personal property tax claims of the County of Leon and the County of Medina . The Proofs of Claim filed to date are by the County of Leon ($453.97) and the County of Medina ($611.15).

The treatment of Class 1 creditors (Leon and Medina County and related taxing entities).

**Class 1** pertains to the allowed secured claims of the above described taxing authorities. The claims of the taxing authorities shall be paid in full through equal, consecutive monthly installments, with the first payment being made on the first day of the first full month following the Effective Date, amortized over a period of two (2) years from the Effective Date. Post-petition interest will accrue on that portion of the respective tax claims for tax years 2024 and prior at the rate of twelve percent (12%) per annum from the Petition Date until the taxes are paid in full and on that portion of the respective creditor claims for tax year 2024 shall accrue statutory interest at the rate of twelve percent (12%) per annum from January 4, 2024 until the total tax debt is paid in full. The projected monthly payments are as follows: Leon County ($21.37) and Medina County ($28.77).

In the event the Reorganized Debtors sell, convey, or transfer any of the properties which are the collateral of the respective taxing authority claim or post confirmation tax debt, the Debtors shall remit such sales proceeds first to respective taxing authority to be applied to the respective taxing authority tax debt incident to any such property/tax account sold, conveyed or transferred and such proceeds shall be disbursed by the closing agent at the time of closing prior to any disbursement of the sale proceeds to any other person or entity.

The Reorganized Debtors may pre-pay the pre-petition tax debt to the taxing authorities at any time. The Debtors shall have sixty (60) days from the Effective Date to Object to the tax claims; otherwise, the claim shall be deemed as an allowed secured claims in the amount of the taxing authorities Proof of Claim. The tax claims shall retain their statutory lien securing their pre-petition and post-petition tax debts until such time as the tax debts are paid in full. The Reorganized Debtors shall pay all post-petition ad valorem tax liabilities (tax year 2024 and subsequent tax years) owing to the taxing authorities in the ordinary course of business as such tax debt comes due and prior to said ad valorem taxes becoming delinquent without the need of the taxing authorities to file an administrative expense claim and/or request for payment.

Should the Reorganized Debtors fail to make any payments as required in this Plan, the taxing authorities shall provide written notice of that default by sending written notice by certified mail

to Debtors and Debtors' attorney advising of that default, and providing the Reorganized Debtors with a period of fifteen (15) days to cure the default. In the event that the default is not cured within fifteen (15) days, the respective taxing authority may, without further order of this Court or notice to the Debtors, pursue all of its rights and remedies available to it under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed. Additionally, the failure to timely pay post-petition and/or post-confirmation taxes while the Reorganized Debtors are still paying any pre-petition debt, shall be considered an event of default. The taxing authorities shall provide Debtors with written notice of that default and a fifteen (15) day opportunity to cure said default. In the event that the Reorganized Debtors fail to timely cure the post-petition and/or post-confirmation default, the taxing authorities may, without further order of this court or notice to the Debtor, pursue all of their rights and remedies available to them under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed. The Reorganized Debtors shall be entitled to no more than three (3) Notices of Default. In the event of a fourth (4th) default, the taxing authority may pursue all rights and remedies available to it under the Texas Property Tax Code in state district court without further order of this court or further notice to the Debtors.

The Class 1 creditors are unimpaired.

5.2    Class 2. Consists of the secured claims to A+ Federal C.U. (hereinafter "A+" ). The claim is secured by a 2021 Cherokee Arctic Wolf 3770 Fifth Wheel RV which the Debtors estimate has a market value in the amount of $27,000.00.  A+ filed a Proof of Claim on February 8, 2024 in the amount of $48,518.88 as fully secured.  the Debtors were in arrears at the filing of the bankruptcy and will begin payments post-confirmation. The Debtors propose to repay A+ through monthly payments of principal and interest (7.25%) in the amount of $416.70 based upon a twelve (12) year term and a collateral value of $40,000.00. The monthly payments are to begin on the 1st day of the month following the Effective Date of the Plan.  The balance of the claim is to be treated as an unsecured claim under Class 20. The Debtors have A+'s collateral insured and A+ will retain its liens on the Fifth Wheel until its secured claim has been paid in full.

The Class 2 creditor is impaired and is entitled to vote on the Plan.

5.3    Class 3. Consists of the secured claims to PNC Bank (hereinafter "PNC"). The claim is secured by a JCB 270 Loader which the Debtors estimate has a market value in the amount of $60,000.00.  PNC filed a Proof of Claim on March 13, 2024 in the amount of $88,014.38 with a collateral value of $None.  The Debtors were in arrears at the filing of the bankruptcy and will begin payments post-confirmation. The Debtors propose to repay PNC through monthly payments of principal and interest (6.35%) in the amount of $1,169.76 based upon a five (5) year term and a value in the amount of $60,000.00. The monthly payments are to begin on the 1st day of the month following the Effective Date of the Plan. The balance of the claim is to be treated as an unsecured claim under Class 20. The Debtors have PNC's collateral insured and PNC will retain its lien on the JCB 270 Loader until its secured claim has been paid in full.

The Class 3 creditor is impaired and is entitled to vote on the Plan.

5.4     Class 4. Consists of the secured claims to PNC Bank (hereinafter "PNC"). The claim is secured by a JBC 352 Mini-excavator which the Debtors estimate has a market value in the amount of $50,000.00. PNC filed a Proof of Claim on March 13 ,2024 in the amount of $49,935.14 with a collateral value in the amount of $49,935.14. The Debtors were in arrears at the filing of the bankruptcy and will begin payments post-confirmation. The Debtors propose to repay PNC through monthly payments of principal and interest (3.99%) in the amount of $919.41 based upon a five (5) year term and a value of $49,935.14. The monthly payments are to begin on the 1st day of the month following the Effective Date of the Plan. The balance of the claims is to be treated as an unsecured claim under Class 20. The Debtors have PNC's collateral insured and PNC will retain its lien on the JBC 352 Mini-excavator until its secured claim has been repaid in full.

The Class 4 creditor is impaired and is entitled to vote on the Plan.


5.5     Class 5. Consists of the secured claims to PNC Bank (hereinafter "PNC"). The claim is secured by a JCB 270T Compact Truck Loader with PNC which the Debtors estimate has a market value in the amount of $60,000.00. PNC filed a Proof of Claim on March 13, 2024 in the amount of $82,119.53 with a value of $None listed. The Debtors were in arrears at the filing of the bankruptcy and will begin payments post-confirmation. The Debtors propose to repay PNC through monthly payments of principal and interest (3.99%) in the amount of $1,104.72 based upon a five (5) year term and a value of $60,000.00. The monthly payments are to begin on the 1st day of the month following the Effective Date of the Plan. The balance of the claim is to be treated as an unsecured claim under Class 20. The Debtors have PNC's collateral insured and PNC will retain its lien on the Skidsteer until its secured claim has been paid in full.

The Class 5 creditor is impaired and is entitled to vote on the Plan.


5.6     Class 6. Consists of the secured claims to Kerr County FCU (hereinafter "Kerr"). The claim is secured by a 2022 Dodge Ram 3500 which the Debtors estimate has a market value in the amount of $45,000.00. Kerr has not filed a Proof of Claim. The Debtors were in arrears at the filing of the bankruptcy and will begin payments post-confirmation. The Debtors propose to repay Kerr through monthly payments of principal and interest (6%) in the amount of $869.98 based upon a five (5) term and a value of $45,000.00. The monthly payments are to begin on the 1st day of the month following the Effective Date of the Plan. The balance of the claim is to be treated as an unsecured claim under Class 20. The Debtors have Kerr's collateral insured and Kerr will retain its lien on the 2022 Dodge Ram 3500 until its secured claim has been paid in full.

The Class 6 creditor is impaired and is entitled to vote on the Plan.


5.7     Class 7. Consists of the secured claims to Kubota Credit Corporation (hereinafter "Kubota"). The claim is secured by a Zero-turn Lawn Mower which the Debtors estimate has a market value in the amount of $4,500.00. Kubota filed a Proof of Claim on March 11, 2024 in the amount of $6,993.25 with a value of $5,528.00. The Debtors were in arrears at the filing of the bankruptcy and will begin payments post-confirmation. The Debtors propose to repay Kubota through monthly payments of principal and interest (0%) in the amount of $208.33 based upon a two (2) term and a value of

$5,000.00. The monthly payments are to begin on the 1st day of the month following the Effective Date of the Plan. The balance of the claim is to be treated as an unsecured claim under Class 20. The Debtors have Kubota's collateral insured and Kubota will retain its lien on the Zero-turn Lawn Mower until its secured claim has been paid in full.

The Class 7 creditor is impaired and is entitled to vote on the Plan.

5.8     Class 8.  Consists of the secured claims to Kubota Credit Corporation (hereinafter "Kubota"). The claim is secured by a Loftness Mulcher which the Debtors estimate has a market value in the amount of $10,000.00. Kubota filed a Proof of Claim on March 11, 2024 in the amount of $21,691.40 with a value of $14,552.87. The Debtors were in arrears at the filing of the bankruptcy and will begin payments post-confirmation. The Debtors propose to repay Kubota through monthly payments or principal and interest (10.35%) in the amount of $255.31 based upon a four (4) ear term and a value of $10,000.00. The monthly payments are to begin on the 1st day of the month following the Effective Date of the Plan. The balance of the claim is to be treated as an unsecured claim under class 20. The Debtors have Kubota's collateral insured and Kubota will retain its lien on the Loftness Mulcher until its secured claim has been paid in full.

The Class 8 creditor is impaired and is entitled to vote on the Plan.

5.9     Class 9. Consists of the secured claims to Kubota Credit Corporation (hereinafter "Kubota"). The claim is secured by a Kubota R540R41 (Wheel Loader) which the Debtors estimate has a market value in the amount of $32,000.00. Kubota filed a Proof of Claim on March 11, 2024 in the amount of $75,802.79 with a value of $45,506.80. The Debtors were in arrears at the filing of the bankruptcy and will begin payments post-confirmation. The Debtors propose to repay Kubota through monthly payments of principal and interest (1.67%) in the amount of $584.24 based upon a six (6) year term and a value of $40,000.00. The monthly payments are to begin on the 1st day of the month following the Effective Date of the Plan. The balance of the claim is to be treated as an unsecured claim under Class 20. The Debtors have Kubota's collateral insured and Kubota will retain its lien on the Wheel Loader until its secured claim has been paid in full.

The Class 9 creditor is impaired and is entitled to vote on the Plan.

5.10     Class 10. Consists of the secured claims to Kubota Credit Corporation (hereinafter "Kubota"). The claim is secured by a Land Pride Digger which the Debtors estimate has a market value in the amount of $7,500.00. Kubota filed a Proof of Claim on March 11, 2024 in the amount of $3,468.89 with a value of $4,495.50. The Debtors were in arrears at the filing of the bankruptcy and will begin payments post-confirmation. The Debtors propose to repay Kubota through monthly payments of principal and interest (1.78%) in the amount of $147.27 based upon a two (2) year term and a value of $3,468.89. The monthly payments are to begin on the 1st day of the month following the Effective Date of the Plan. The balance of the claim is to be treated as an unsecured claim under Class 20. The Debtors have Kubota's collateral insured and Kubota will retain its lien on the Land Pride Digger until its secured claim has been paid in full.

The Class 10 creditor is impaired and is entitled to vote on the Plan.

5.11    Class 11.  Consists of the secured claims to Kubota Credit Corporation (hereinafter "Kubota"). The claim is secured by a Land Pride Hydraulic Breaker Model which the Debtors estimate has a market value in the amount of $7,500.00. Kubota filed a Proof of Claim on March 11, 2024 in the amount of $13,583.44 with a value of $9,436.50. The Debtors propose to surrender the collateral to Kubota. Any remaining claim owing to Kubota after it forecloses and sells the collateral will be treated as a Class 20 unsecured creditor.

The Class 11 creditor is unimpaired and is not entitled to vote on the Plan.

5.12    Class 12.  Consists of the secured claims to Mahindra Finance USA, LLC (hereinafter "Mahindra"). The claim is secured by a Mahindra Tractor which the Debtors estimate has a market value in the amount of $10,000.00. Kubota filed a Proof of Claim on March 6, 2024 in the amount of $10,952.50 with a value of $No value. The Debtors were in arrears at the filing of the bankruptcy and will begin payments post-confirmation. The Debtors propose to repay Mahindra through monthly payments of principal and interest (6.29%) in the amount of $194.58 based upon a five (5) year term and a value in the amount of $10,000.00. The monthly payments are to begin on the 1st day of the month following the Effective Date of the Plan. The balance of the claim is to be treated as an unsecured claim under Class 20. The Debtors have Mahindra's collateral insured and Mahindra will retain its lien on the Mahindra Tractor until its secured claim has been paid in full.

The Class 12 creditor is impaired and is entitled to vote on the Plan.

5.13    Class 13.  Consists of the secured claims to Performance Finance. The claim is secured by a 2023 Polaris General XP 1000 Premium which the Debtors estimate has a market value in the amount of $12,000.00. Performance filed a Proof of Claim on January 25, 2024 in the amount of $26,593.03 with a value of $None listed. The Debtors were in arrears at the filing of the bankruptcy and will begin payments post-confirmation. The Debtors propose to repay Performance through monthly payments of principal and interest (8.99%) in the amount of $249.04 based upon a five (5) year term and a value in the amount of $13,000.00. The monthly payments are to begin on the 1st day of the month following the Effective Date of the Plan. The balance of the claim is to be treated as an unsecured claim under Class 20. The Debtors have Performance's collateral insured and Performance will retain its lien on the Polaris until its secured claim has been paid in full.

The Class 13 creditor is impaired and is entitled to vote on the Plan.

5.14    Class 14.  Consists of the secured claims to Randolph-Brooks FCU (hereinafter "RBFCU:) The claim is secured by a 2022 Chevrolet Silverado 3500HD which the Debtors estimate has a market value in the amount of $54,000.00. RBFCU filed a Proof of Claim on February 21, 2024 in the amount of $116,557.39 with a value of a $No value. The Debtors were in arrears at the filing of the bankruptcy and will begin payments post-confirmation. The Debtors propose to repay RBFCU through monthly payments of principal and interest (7.75%) in the amount of $835.00 based upon a seven (7) year term and value of $54,000.00. The monthly payments are to begin on the 1st day of the month following

the Effective Date of the Plan. The balance of the claim is to be treated as an unsecured claim under Class 20. The Debtors have RBFCU's collateral insured and RBFCU will retain its lien on the Polaris until its secured claim has been paid in full.

The Class 14 creditor is impaired and is entitled to vote on the Plan.

5.15    Class 15. Consists of the secured claims to Security Service FCU (hereinafter "SSFCU"). The claim is secured by a 2020 Ford F-350 which the Debtors estimate has a market value in the amount of $40,000.00. SSFCU filed a Proof of Claim on February 21, 2024 in the amount of $76,119.16 with a value of $71,000.00. The Debtors were in arrears at the filing of the bankruptcy and will begin payments post-confirmation. The Debtors propose to repay SSFCU through monthly payments of principal and interest (7.49%) in the amount of $777.84 based upon a six (6) year term and value of $45,000.00. The monthly payments are to begin on the 1st day of the month following the Effective Date of the Plan. The balance of the claim is to be treated as an unsecured claim under Class 20. The Debtors have SSFCU's collateral insured and SSFCU will retain its lien on the 2020 Ford F-350 until its secured claim has been paid in full.

The Class 15 creditor is impaired and is entitled to vote on the Plan.

5.16    Class 16. Consists of the secured claims to Sheffield Financial (hereinafter "Sheffield"). The claim is secured by a 2022 P&J Gooseneck Dump Trailer which the Debtors estimate has a market value in the amount of $3,000.00. Sheffield filed a Proof of Claim on January 19, 2024 in the amount of $9,207.79 with a value of $None Listed. The Debtors were in arrears at the filing of the bankruptcy and will begin payments post-confirmation. The Debtors propose to repay Seffield through monthly payments of principal and interest (13.99%) in the amount of $170.86 based upon a three (3) year term and value of $5,000.00. The monthly payments are to begin on the 1st day of the month following the Effective Date of the Plan. The balance of the claim is to be treated as an unsecured claim under Class 20. The Debtors have Sheffield's collateral insured and Sheffield will retain its lien on the P&J Gooseneck Dump Trailer until its secured claim has been paid in full.

The Class 16 creditor is impaired and is entitled to vote on the Plan.

5.17    Class 17. Consists of the secured claims to Synchrony Bank (hereinafter "Synchrony"). The claim is secured by a 2022 Polaris G22GMJ99AC which the Debtors estimate has a market value in the amount of $17,000.00. Synchrony filed a Proof of Claim on March 12, 2024 in the amount of $31,198.76 with a value of $13,500.00. The Debtors were in arrears at the filing of the bankruptcy and will begin payments post-confirmation. The Debtors propose to repay Synchrony through monthly payments of principal and interest (9.99%) in the amount of $286.77 based upon a five (5) year term and value of $13,500.00. The monthly payments are to begin on the 1st day of the month following the Effective Date of the Plan. The balance of the claim is to be treated as an unsecured claim under Class 20. The Debtors have Synchrony's collateral insured and Synchrony will retain its lien on the Fifth Wheel until its secured claim has been paid in full.

The Class 17 creditor is impaired and is entitled to vote on the Plan.

5.18    Class 18. Consists of the secured claims to Wells Fargo Equipment Finance (hereinafter "Wells Fargo"). The claim is secured by a 2022 Leeboy 1500 Asphalt Distributor which the Debtors estimate has a market value in the amount of $7,000.00. Wells Fargo filed a Proof of Claim on February 2, 2024 in the amount of $13,236.77. The Debtors propose to surrender the collateral to Wells Fargo. Any remaining claim of Wells Fargo after it forecloses and sells the collateral will be treated as a Class 20 unsecured creditor. The Debtors have voluntarily surrendered the collateral to Wells Fargo.

The Class 18 creditor is unimpaired and is not entitled to vote on the Plan.

5.19    Class 19. The class consists of the priority unsecured claims of the Internal Revenue Service with a claim in the amount of $750.00 as of the filing of this bankruptcy case. The priority unsecured claim of the Internal Revenue Service will be paid in full pursuant to the following terms - monthly payments of principal and interest (7%) in the amount of $33.58, based upon a two (2) year term. The monthly payments are to begin on the first day of the month following ninety (90) days from the Effective Date of the Plan.

The Class 19 creditor is unimpaired and not entitled to vote on the Plan.

5.20    Class 20. The class consists of the general unsecured creditors of the Estate. Attached to the Plan is an estimated unsecured claim list for the Estate. (Exhibit "C") Some of the amounts are not final and will need to be amended upon the claims becoming final allowed claims. Until a claim is liquidated to a final allowed claim, no payments will be made to the unliquidated creditors. All amounts that would otherwise be due to any Class 20 unsecured claim will be escrowed by the Debtor until the final allowance/disallowance of such claim(s). The general unsecured claims are to be paid on a pro-rata basis for a period of thirty-six (36) months based upon the monthly disposable income, less a reasonable hold back of twenty-five percent (25%) for capital items necessary for the Debtor's ongoing operations. The monthly payments are to begin on the first day of the month following ninety (90) days from the Effective Date of the Plan.

The Class 20 creditors are impaired and entitled to vote on the Plan.

5.21    Class 21 - Debtors (Jimmy Ray Lewis, Jr., and wife, Dorina Joy Lewis). The Debtors will retain their interests in real and personal property as it existed at the filing of the case., subject to the claims and encumbrances set forth herein

The Class 21 creditors are unimpaired and not entitled to vote on the Plan.

# ARTICLE VI
## ACCEPTANCE OR REJECTION OF PLAN

6.1    Classes Entitled to Vote. Each impaired Class of Claims entitled to vote will separately vote to accept or reject the Plan. Any unimpaired Class will not be entitled to accept or reject the Plan. Any unimpaired Class is deemed to have accepted the Plan under Section 1126(f) of the Bankruptcy Code.

6.2    Class Acceptance Requirement. A Class of Claims has accepted the Plan if it is accepted by at least two-third (2/3) in amount and more than one-half (½) in number of the Allowed Claims in such Class that have voted on the Plan.

6.3    Elimination of Vacant Classes. Any Class of Claims that is not occupied as of the date of the commencement of the Confirmation Hearing by an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 will be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to Section 1129(a)(8) of the Bankruptcy Code.

6.4    Request Pursuant to Section 1191(b). This section constitutes the request by the Debtors, pursuant to Section 1191(b) of the Bankruptcy Code, for the Bankruptcy Court to confirm this Plan notwithstanding the fact that the requirements of Section 1129(a)(8), (a)(10) or (a)(15) of the Bankruptcy Code may not be met.

6.5    Application of Special Rule Pursuant to Section 1191(e). As applicable, this subsection will note the application of the special rule by the Debtor, pursuant to Section 1191(e) of the Bankruptcy Code, for the Bankruptcy Court to confirm this Plan under Section 1191(b) of the Bankruptcy Code as necessary.

# ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.1    Transfer of Assets. On the Effective Date, all Assets of the Debtors will be vested in the Reorganized Debtors. The Assets will be vested in the Reorganized Debtors free and clear of all Liens, Claims, rights, Interests, and charges, except as expressly provided in this Plan.

7.2    Assumption of Obligation to Make Distribution. If the Plan is confirmed under Section 1191(b) of the Bankruptcy Code, unless otherwise ordered by the Court in the Order Confirming the Plan, the Subchapter V Trustee will make payments to creditors provided in this Plan. Except for Distributions administered by the Subchapter V Trustee, the Reorganized Debtors will be deemed to have assumed the obligation to make its respective Distributions pursuant to this Plan, including the obligation to make all Distributions on account of Allowed Claims in its respective bankruptcy case.

7.3    Actions by the Debtors to Implement Plan. The entry of the Confirmation Order will constitute all necessary authorization for the Debtors to take or cause to be taken all actions necessary or

appropriate to consummate, implement or perform all provisions of this Plan on an after the Effective Date, and all such actions taken or caused to be taken will be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation.

7.4     Management of the Reorganized Debtors.  From and after the Effective Date, the Reorganized Debtors' management will consist of the following people: Jimmy Ray Lewis, Jr., and wife, Dorina Joy Lewis.

This is the same management structure which exists today.

7.5     Source of Funding for Operations and Plan Obligations. The obligations under the Plan will be funded by the operation of the Reorganized Debtors' business.

7.6     Post-Effective Date Service List.  Pleadings filed by any party-in-interest with the Bankruptcy Court after the Effective Date will be served on the following Persons (collectively the "Service List"): (I) any Person directly affected by the relief sought in the pleadings, (ii) the U.S. Trustee, (iii) the Subchapter V Trustee; (iv) parties which have filed a Notice of Appearance in this Bankruptcy Case, and (v) the Reorganized Debtors through their legal counsel.

7.7     Section 505 Powers.  All rights and powers pursuant to Section 505 of the Bankruptcy Code are hereby reserved to the Estate and will be transferred to, and vested in, the Reorganized Debtors on the Effective Date (unless otherwise waived).

7.8     Section 501(c) Powers.  All rights and powers to seek or exercise any right or remedy of equitable subordination are hereby reserved to the Estate and will be transferred to, and vested in, the Reorganized Debtors on the Effective Date as Estate Defenses.

7.9     Plan Injunction.  The Debtor and the Reorganized Debtors have full power, standing and authority to enforce the Plan Injunction against any Person, either through an action before the Bankruptcy Court or any other tribunal having appropriate jurisdiction.

## ARTICLE VIII
## PROVISIONS GOVERNING DISTRIBUTIONS

8.1     Distributions.  The Reorganized Debtors will be responsible for making Distributions to holders of Allowed Claims.  However, if the Plan is confirmed under Section 1191(b) of the Bankruptcy Code, unless otherwise ordered by the Court in the order confirming the Plan, the Subchapter V Trustee will make payments to creditors provided in this Plan.  The Reorganized Debtors will transfer the funds to be distributed to creditors under the Plan to the Subchapter V Trustee by wire transfer or check as payments are due.  The Subchapter V Trustee will in turn, distribute the payments to creditors required by the Plan in a timely manner.

8.2     Timing and Amount of Distributions. No Distributions will be made on account of any Claim until such Claim is Allowed, except as otherwise set forth in this Plan or otherwise ordered by the Bankruptcy Court. No Distribution will be made on account of any Contested Claim until such Claim is Allowed. Except as expressly set forth in the Plan or in the Confirmation Order, the Debtors will, in the exercise of its good faith business judgment, determine the timing and amount of all Distributions as expeditiously as reasonable possible. The Debtor or Reorganized Debtors may, but will not be required to, seek approval of, or any other appropriate relief from the Bankruptcy Court with respect to any of such Distributions. Any Unclaimed Property may be paid into the registry of the Bankruptcy Court or otherwise distributed in accordance with the orders of the Bankruptcy Court.

(a)     Projected Disposable Income: Pursuant to 11 U.S.C. §1191(c), the Reorganized Debtors will make payments and distributions from its Disposable Income as reflected in the Plan Projections (attached hereto as Exhibit B).

(b)     Liquidation Analysis: Bankruptcy Code §1129(a)(7) requires that a Chapter 11 Plan of Reorganization must provide at least as much value to each of the Debtors' creditors as could be realized in a liquidation under Chapter 7 of the Bankruptcy Code.

As shown by the liquidation analysis attached hereto as Exhibit A, the Debtors estimate that approximately $-0- would be available to distribute to Unsecured Claimants if the Debtor were to undergo a Chapter 7 liquidation. The Debtors estimate that Unsecured Claims will receive more under the Plan. Therefore, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

8.3     Means of Cash Payment. Cash payments pursuant to this Plan will be made by check drawn on, or by wire transfer from, a domestic bank, or by other means agreed to by the payor and payee.

8.4     Record Date for Distributions. As of the close of business on the Effective Date (the "Distribution Record Date", the register for Claims and Interests will be closed and there will be no further changes in the holder of records of any Claim or Interest. Although there is no prohibition against the transfer of any Claim by any Creditor, the Debtors and the Reorganized Debtors have no obligation to recognize any transfer of any Claims or Interests occurring after the Distribution Record Date, and the Debtors and the Reorganized Debtors will instead be authorized and entitled to recognize and deal for all purposes under this Plan, including for the purpose of making all Distributions, with only those holders of Claims so reflected as of the Distribution Record Date. The Debtors and the Reorganized Debtors may, in the exercise of their good faith business judgment, agree to recognize transfers of Claims after the Distribution Record Date, but have no obligation to do so.

8.5     Delivery of Distributions. All Distributions, deliveries, and payments to the holders of any Allowed Claims will be made to the addresses set forth on the respective proofs of Claim filed in this Bankruptcy Case by such Claimants or, if the Distribution is to be made based on a Claim reflected as Allowed in the Schedules, at the address reflected in the Schedules. Any such Distribution, delivery or payment will be deemed as made for all purposes relating to this Plan when deposited in the United States Mail, postage prepaid, addressed as required in the preceding sentence. If any Distribution is returned as undeliverable, no further Distribution will be made on account of such Allowed Claim unless and until

the Reorganized Debtors are notified of such holder's then current address, at which time all missed Distributions will be made to the holder of such Allowed Claim. However, all notices ot the Reorganized Debtors reflecting new or updated addresses for undeliverable Distributions will be made on or before one hundred twenty (120) days after the date of the attempted Distribution or such longer period as the Debtors may fix in the exercise of their sole discretion. After such date, all Unclaimed Property will revert to the Reorganized Debtors and the Claim of any holder with respect to such property will be discharged and forever barred.

8.6     Time Bar to Cash Payments. Checks issued in respect of Allowed Claims will be null and void if not cashed within ninety (90) days of the date of issuance thereof, Requests for reissuance of any check will be made directly to the Reorganized Debtors by the holders of the Allowed Claim with respect to which such check originally was issued. Any claim in respect of such a voided check will be made on or before one hundred twenty (120) days after the date of issuance of such check or such longer period as to which the Reorganized Debtors may agree in writing. After such date, all Claims in respect of void checks will be discharged and forever barred.

8.7.    Distributions after Substantial Consummation. All Distributions of any kind made to any Creditor after Substantial Consummation and any and all other actions taken under this Plan after Substantial Consummation will not be subject to relief, reversal or modification by any court unless the implementation of the Confirmation Order is stayed by an order granted under Bankruptcy Rule 8005.

8.9     No Penalty for Prepayments. Notwithstanding anything to the contrary in this Plan, the Debtors or Reorganized Debtors may prepay (without penalty) any Allowed Claims, including from funds derived from the sale of Assets (after payment of Allowed Claims secured thereby, if any), new financing, or otherwise.

## ARTICLE IX
## RETENTION OF ESTATE CLAIMS AND ESTATE DEFENSES

9.1     Retention of Estate Claims. Except as otherwise specifically provided in this Plan, pursuant to Section 1123(b)(3) of the Bankruptcy Code, all Estate Claims, including claims scheduled by the Debtors on the Schedule B - Personal Property filed in this case will be transferred to, and vested in, the Reorganized Debtors, both for purposes of seeking an affirmative recovery against any Person and as an offset or defense against any Claim asserted against the Estate or the Debtors. Without limiting the germality of the foregoing, all applicable legal privileges of the Debtors or Estate, including both the attorney-client privilege and the work product privilege, will be vested in the Reorganized Debtors which will have the sole and exclusive standing and authority to assert any such privilege on behalf of the Debtors or their Estate. All Estate Claims will be deemed to have been transferred to, and vested in, the Reorganized Debtors as of the Effective Date based on the entry of the Confirmation Order. The provisions of this Article of the Plan are provided in the interest of providing maximum disclosure of the Estate Claims of which the Debtors are presently aware and will not act as a limitation on the potential Estate Claims that may exist. It is the specific intention of this Plan that all Chapter 11 Avoidance Actions and all associated remedies, and any other causes of action, whether arising before or after the

Petition Date, and whether arising under the Bankruptcy Code or applicable state or federal non-bankruptcy laws will all be retained and preserved under this Plan to be transitioned to, and vested in, the Reorganized Debtors. All Estate Claims are retained both as causes of action for an affirmative recovery and as counterclaims and offset to any Claims asserted against the Estate.

9.2     Retention of Estate Defenses. Except as otherwise specifically provided in this Plan, pursuant to Section 1123(b)(3) of the Bankruptcy Code, all Estate Defenses will be transferred to, and vested in, the Reorganized Debtors. For this purpose, all Estate Defenses are hereby reserved and retained by the Reorganized Debtors and the Estate, including without limitation all such Estate Defenses available to the Estate pursuant to Section 558 of the Bankruptcy Code.

9.3     Assertion of Estate Claims and Estate Defenses. On the Effective Date, the Reorganized Debtors will be vested with the exclusive right, authority and standing to assert all Estate Claims and Estate Defenses for the benefit of the Debtors and the Estate to maximize the value of the Assets and Distributions.

## ARTICLE X
## PROCEDURES FOR RESOLVING AND TREATMENT CONTESTED CLAIMS

10.1     Claims Listed in Schedules as Disputed. Any Claim which is listed in the Schedules as unliquidated, contingent, or disputed, and for which no Proof of Claim has been timely filed, will be considered as Disallowed as of the Effective Date without the necessary of any further action by the Debtors or further order of the Bankruptcy Court other than the entry of the Confirmation Order.

10.2     Responsibility for Objecting to Claims and Settlement of Claims. The Debtors and Reorganized Debtors have the exclusive standing and authority to either object to or settle and compromise any Objection to any Claim and any claim, lien, encumbrance, or interest in the Assets, including as follows:

(a)     From and after the Effective Date, the Reorganized Debtors has the sole and exclusive right to (I) file, settle, or litigate to Final Order any Objections to any Claims; and (ii) seek to subordinate any Claim. Any Contested Claim may be litigated to Final Order by the Debtors or the Reorganized Debtors; and

(b)     From and after the Effective Date, the Reorganized Debtors have the sole and exclusive right to settle, compromise or otherwise resolve any Contested Claim without the necessity of any further notice or approval of the Bankruptcy Court. Bankruptcy Rule 9019 will not apply to any settlement or compromise of a Contested Claim after the Effective Date.

10.3     Objection Deadline. All Objections to Claims will be served and filed by the Objection Deadline (sixty (60) days after the Effective Date of the Plan); provided, however, the Objection Deadline will not apply to Claims which are not reflected in the claims register, including any alleged informal

proofs of claim. The Reorganized Debtors may seek to extend the Objection Deadline pursuant to a motion filed on or before the then applicable Objection Deadline. Any such motion may be granted without notice or a hearing. In the event that the Reorganized Debtors file such a Motion and the Bankruptcy Court denies such Motion, the Objection Deadline will nevertheless be automatically extended to that date which is ten (10) Business Days after the date of entry of the Bankruptcy Court's order denying such motion. Any proof of claim other than one based upon a Rejected Claim and which is filed more than thirty (30) days after the Effective Date will be of no force and effect and need not be objected to by the Debtors. Nothing contained herein will limit the right of the Reorganized Debtors to object to Claims, if any, filed or amended after the Objection Deadline.

10.4    <u>Response to Claim Objection</u>. If the Debtors or Reorganized Debtors file an Objection to any Claim, then the holder of such Claim will file a written response to such Objection within thirty (30) days after the filing and service of the Objection upon the holder of the Contested Claim. Each such Objection will contain appropriate negative notice advising the Creditor whose Claim is subject to the Objection of the requirement and time period to file a response to such Objection and that if no response is timely filed to the Objection, the Bankruptcy Court may enter an order that such Claim is Disallowed without further notice or hearing.

10.5    <u>Distributions on Account of Contested Unliquidated Claims</u>. If a Claim is Contested, then the dates for any Distributions as to such Contested Claim will be determined based upon its date of Allowance, and thereafter, Distribution will be made on account of such Allowed Claim pursuant to the provisions of the Plan. No Distribution will be made on account of such Allowed Claim pursuant to the provisions of the Plan. No Distribution will be made on account of a Contested/Unliquidated Claim until Allowed. Until such time as a contingent/unliquidated Claim becomes fixed and final by a Final Order Allowing such Claim, such Claim will be treated as a Contested Claim for purposes of estimates, allocations, and Distributions under the Plan. Any contingent right to contribution or reimbursement will continue to be subject to Section 502(e) of the Bankruptcy Code. The Debtors will have sixty (60) days from the date of liquidation of any contested/unliquidated claims to Object to the allowance of such claim.

10.6    <u>No Waiver of Right to Object</u>. Except as expressly provided in this Plan, nothing contained in this Plan or the Confirmation Order will waive, relinquish, release or impair the Debtors' or the Reorganized Debtors' right to object to any Claim.

10.7    <u>Offsets and Defenses</u>. The Debtors and the Reorganized Debtors will be vested with and retain all Estate Claims and Estate Defenses, including without limitation all rights of offset or recoupment and all counterclaims against any Claimant holding a Claim. Assertion of counterclaims by the Debtors or the Reorganized Debtors against any Claim asserted against the Estate, the Debtors, or the Reorganized Debtors will constitute "core" proceedings.

10.8    <u>Claims Paid or Reduced Prior to Effective Date</u>. Notwithstanding contests of the Schedules, Claims listed therein as undisputed, liquidated and not contingent will be reduced by the amount, if any, that was paid by the Debtor prior to the Effective Date, including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules

will be deemed amended and reduced to reflect that such payments were made. Nothing in the Plan will preclude the Debtors from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

## ARTICLE XI
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

11.1    All executory contracts of the Debtors not expressly rejected in writing on or before the Confirmation Date are deemed to be assumed. Rejection is accomplished by filing an Application therefore with the Court together with proof of service of the Application to reject upon all parties affected thereby although the Court's approval of the rejection will not take place until the hearing on Application some time later.

If no agreement has been reached regarding the cure of a lease arrearage (on a lease being assumed), any such pre-petition lease arrearages will be added to the end of the lease term. Should the Debtors default in the lease cure(s), the terms of the applicable lease are controlling.

11.2    All parties to a rejected contract (other than a contract previously rejected by Motion and Order approved by this Court) will have thirty (30) days from and after the date that the order approving rejection becomes a Final Order within which to file a Proof of Claim for damages, if any, resulting from such rejection. The failure to file such Proof of Claim within that period will forever bar the party affected by the rejection from participating in any distribution under the Plan or recovering any payment on any claim on account of such rejection.

## ARTICLE XII
## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF PLAN

12.1    <u>Conditions to Confirmation and Effectiveness of Plan</u>. The Plan will not become effective until the following conditions have been satisfied and which may occur concurrently with the Effective Date: (a) the Confirmation Order has been entered and (b) the necessary Plan Documents have been executed and delivered.

12.2    <u>Notice of the Effective Date</u>. Promptly upon the occurrence of the Effective Date, the Debtors or the Reorganized Debtors will cause to be filed with the Court and served on all Creditors and parties-in-interest, a notice of the Effective Date.

## ARTICLE XIII
## EFFECT OF THE CONFIRMATION OF THE PLAN

13.1 <u>Compromise and Settlement</u>. Pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rules 9019, and in consideration of the classification, potential Distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good faith compromise and settlement of all Claims, Interests and controversies subject to, or dealt with, under this Plan, including, without limitation, all Claims against the Debtors or Estate arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, fixed or contingent, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtors or the Estate. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements embodied in this Plan, and all compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings will constitute its determination that such compromises and settlements are in the best interest of the Debtors, the Debtors' bankruptcy Estate, Creditors and other parties-in-interest, and are fair, equitable and within the range of reasonableness. The rights afford in the Plan and the treatment of all Claims and Interests herein will be in exchange for, and in complete satisfaction and release of, all Claims and Interests of any nature whatsoever against and in the Debtors, the Estate, and the Assets. Except as otherwise provided herein, the Persons will be precluded and forever barred by the Plan Injunction from asserting against the Debtors and their affiliates, successors, assigns, the Estate or the Assets any event, occurrence, condition, thing, or other or further Claims or causes of action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.

13.2 <u>Discharge</u>. Except with respect to any Claims excepted from discharge under 11 U.S.C. §1192, the terms, covenants, and consideration under the Plan will be in exchange for, and in complete satisfaction, discharge, and release of, all Claims of any nature whatsoever against the Debtors, their Estate, and their Assets. Except as otherwise expressly provided herein, upon the Effective Date or upon the granting of a discharge by the Bankruptcy Court pursuant to Section 1192 (the "<u>Order of Discharge</u>"), the Debtors, and their successors in interest and assigns, will be deemed discharged and released pursuant to Section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a Claim based upon such debt it Allowed under Section 502 of the Bankruptcy Code; (c) the holder of a Claim based upon such debt has accepted the Plan; or (d) the Claim has been Allowed, Disallowed, or estimated pursuant to Section 502(c) of the Bankruptcy Code. The Confirmation Order and, if applicable, the Order of Discharge will be judicial determinations of discharge of all liabilities of the Debtors, their successors in interest and assigns, other than those obligations specifically set forth pursuant to the Plan.

13.3 <u>PLAN INJUNCTION</u>. THIS SECTION IS REFERRED TO HEREIN AS THE "PLAN INJUNCTION". EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN, AS OF THE EFFECTIVE DATE ALL HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, THE DEBTORS,

THE ESTATE, OR ANY OF THE ASSETS THAT AROSE PRIOR TO THE EFFECTIVE DATE ARE HEREBY PERMANENTLY ENJOINED AND PROHIBITED FROM THE FOLLOWING: (I) THE COMMENCING OR CONTINUATION IN ANY MANNER, DIRECTLY OR INDIRECTLY, OF ANY ACTION, CASE, LAWSUIT OR OTHER PROCEEDING OF ANY TYPE OF NATURE AGAINST THE DEBTORS, THE REORGANIZED DEBTORS OR THEIR ESTATE, WITH RESPECT TO ANY SUCH CLAIM OR WITHOUT LIMITATION THE ENTRY OR ENFORCEMENT OF ANY JUDGMENT, OR ANY OTHER ACT FOR THE COLLECTION, EITHER DIRECTLY OR INDIRECTLY, OF ANY CLAIM OR INTEREST AGAINST THE ESTATE OR THE DEBTORS (ii) THE CREATION, PERFECTION OR ENFORCEMENT OF ANY LIEN, SECURITY INTEREST, ENCUMBRANCES, RIGHT OR BURDEN, EITHER DIRECTLY OR INDIRECTLY, AGAINST THE DEBTORS, OR (iii) TAKING ANY ACTION IN RELATION TO THE DEBTORS THEIR ESTATE, EITHER DIRECTLY OR INDIRECTLY, WHICH VIOLATES OR DOES NOT CONFORM OR COMPLY WITH THE PROVISIONS OF THIS PLAN APPLICABLE TO SUCH CLAIM OR INTEREST. THE PLAN INJUNCTION WILL ALSO BE INCORPORATED INTO THE CONFIRMATION ORDER.

13.4    Setoffs.    Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the holder of a Claim, the Debtors and the Reorganized Debtors may setoff against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before such Distribution is made), any Claims, rights, Estate Claims and Estate Defenses of any nature that the Debtors may hold against the holder of such Allowed Claim, to the extent such Claims, rights, Estate Claims and Estate Defenses against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan will constitute a waiver or release of any such Claims rights, Estate Claims and Estate Defenses that the Estate may possess against such Claimant. In no event will any Claimant or Interest holder be entitled to setoff any Claim or Interest against any Claim, right, or Estate Claim of the Debtors without the written consent of the Debtors or the Reorganized Debtors unless such holder files a motion with the Bankruptcy Court requesting the authority to perform such setoff notwithstanding any indication in any proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

13.5    Recoupment.    Except as otherwise expressly provided for in the Plan, in no event will any holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, account receivable, or Estate Claim of the Debtors unless (a) such holder actually provides written notice thereof in writing to the Debtors or the Reorganized Debtors of their intent to perform a recoupment, (b) such notice includes the amount to be recouped by the holder of the Claim or Interest and a specific description of the basis for the recoupment, and (c) the Debtors or the Reorganized Debtors have provided a written response to such Claim or Interest holder, stating unequivocally that the Debtors or the Reorganized Debtors, as applicable, consents to the requested recoupment. The Debtors and the Reorganized Debtors have the right, but not the obligation, to seek an order of the Bankruptcy Court allowing any or all of the proposed recoupment. In the absence of a written response from the Debtors or the Reorganized Debtors

consenting to a recoupment or an order of the Bankruptcy Court authorizing a recoupment, no recoupment by the holder of a Claim or Interest will be allowed.

13.6 <u>Turnover</u>. On the Effective Date, any rights of the Estate to compel turnover of Assets under applicable non-bankruptcy law and pursuant to Section 542 and 543 of the Bankruptcy Code will be deemed transferred to and vested in the Reorganized Debtors.

13.7 <u>Automatic Stay</u>. The automatic stay pursuant to Section 362 of the Bankruptcy Code, except as previously modified by the Bankruptcy Court, will remain in effect until the Effective Date of the Plan as to the Debtors, the Estate, and all Assets. As of the Effective Date, the automatic stay will be replaced by the Plan Injunction.

# ARTICLE XIV
## JURISDICTION OF COURTS AND MODIFICATIONS OF THE PLAN

14.1 <u>Retention of Jurisdiction</u>. Pursuant to Sections 1334 and 157 of Title 28 of the United States Code, the Bankruptcy Court will retain exclusive jurisdiction of all matters arising in, arising under, and related to this Bankruptcy Case and the Plan, to the full extent allowed or permitted by applicable law, including without limitation for the purposes of invoking Sections 105(a) and 1142 of th Bankruptcy Code, and for, among other things, the following purposes:

(a)     To hear and determine any and all objections to, or applications or motions concerning, the allowance of Claims or the allowance, classification, priority, compromise, estimation, or payment of any Administrative Expense;

(b)     To hear and determine any and all applications for payment of fees and expenses pursuant to this Plan to any Estate Professional pursuant to Sections 330 or 503 of the Bankruptcy Code, or for payment of any other fees or expenses authorized to be paid or reimbursed under this Plan, and any and all objections thereto;

(c)     To hear and determine pending applications for the rejection, assumption, or assumption and assignment of Executory Contracts and the allowance of Claims resulting therefrom, and to determine the rights of any party in respect to the assumption or rejection of any Executory Contracts;

(d)     To hear and determine any and all adversary proceedings, applications, or contested matters, including relating to the allowance of any Claim;

(e)     To hear and determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan in connection with the enforcement of any remedies made available under the Plan, including without limitation, (I) adjudication of all rights, interests or disputes relating to any of the Assets, (ii) the valuation

of all Collateral, (iii) the determination of the validity of any Lien or claimed right of offset, and (iv) determinations of Objections to Contested Claims;

(f)     To liquidate and administer any disputed, contingent, or unliquidated Claims, including the Allowance of all Contested claims;

(g)     To administer Distributions to holders of Allow Claims as provided herein or in the Confirmation Order;

(h)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(i)     To consider any modification of the Plan pursuant to Section 1127 of the Bankruptcy Code, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation the Confirmation Order;

(j)     To enforce the Plan Injunction against any Person;

(k)     To enter and implement all such orders as may be necessary or appropriate to executed, interpret, construe, implement, consummate, or enforce the terms and conditions of this Plan or the Confirmation Order and the transactions required or contemplated pursuant thereto;

(l)     To hear and determine any motion or application which the Debtors or the Reorganized Debtors are required or allowed to commence before the Bankruptcy Court pursuant to this Plan or the Confirmation Order;

(m)     To hear and determine any other matter not inconsistent with the Bankruptcy Code and Title 28 of the United States Code that may arise in connection with or related to the Plan;

(n)     To determine proceedings pursuant to Section 505 of the Bankruptcy Code;

(o)     To enter a Final Decree closing this Bankruptcy Case; and

(p)     To determine any other matter or dispute relating to the Estate or the Assets and the Distribution thereof.

14.2     _Abstention and Other Courts_.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to this Bankruptcy Case, this Article of the Plan has no effect upon and will not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

14.3     Non-Material Modifications.  The Debtors and the Reorganized Debtors, may, with the approval of the Bankruptcy Court and without notice to all holders of Claims and Interests, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable.  The Debtors may undertake such non-material modification pursuant to this section insofar as it does not adversely change the treatment of the Claim of any Creditor or the Interest of any Interest holder who has not accepted in writing the modification.

14.4     Material Modifications.  Modifications of this Plan may be proposed in writing by the Debtors at any time before confirmation, provided that this Plan, as modified, meets the requirements of Section 1193(a) of the Bankruptcy Code.  This Plan may be modified at any time after confirmation provided the Plan, as modified, meets the requirements of Section 1193(b) or 1193(c), as applicable.

# ARTICLE XV
# MISCELLANEOUS PROVISIONS

15.1     Severability.  Should the Bankruptcy Court determine any provision of the Plan is unenforceable either on its face or as applied to any Claim or Interest or transaction, the Debtors or the Reorganized Debtors may modify the Plan so that any such provision will not be applicable to the holder of any Claim or Interest.  Such a determination of unenforceability will not (a) limit or affect the enforceability and operative effect of any other provision of the Plan, or (b) require the re-solicitation of any acceptance or rejection of the Plan.

15.2     Oral Agreements; Modification of Plan; Oral Representations or Inducements.  The terms of the Plan and Confirmation Order may only be amended in writing and may not be changed, contradicted, or varied by any oral statement, agreement, warranty or representation.  Neither the Debtors, the Reorganized Debtors, nor their attorneys have made any representation, warranty, promise, or inducement relating to the Plan or its confirmation except as expressly set forth in this Plan or the Confirmation Order or other order of the Bankruptcy Court.

15.3     Waiver.  Neither the Debtors nor the Reorganized Debtors will not be deemed to have waived any right, power, or privilege unless the waiver is in writing and signed by the Debtors or Reorganized Debtors, respectively.  There will be no waiver by implication, course of conduct or dealing, or through any delay or inaction by the Debtors or Reorganized Debtors, of any right pursuant to the Plan, including the provisions of this anti-waiver section.  The waiver of any right under the Plan will not act as a waiver of any other or subsequent right, power, or privilege.

15.4     Notice.  Any notice or communication required or permitted by the Plan will be given, made, or sent as follows:

(a)     If to a Creditor, notice may be given as follows: (I) the Creditor has filed no proof of claim, then to the address reflected in the Schedules, or (ii) if the Creditor has filed a proof of claim, then to the address reflected in the proof of claim.

(b)     If to the Debtors, notice will be sent to the Debtors and counsel of record for the Debtor.

(c)     If to the Reorganized Debtors, notice will be sent to the Reorganized Debtors and counsel of record for the Reorganized Debtors.

(d)     Any Creditor desiring to change its address for the purpose of notice may do so by giving notice to the Debtors or Reorganized Debtors of their new address in accordance with the terms of this section.

(e)     Any notice given, made or sent as set forth above will be effective upon being (I) deposited in the United States Mail, postage prepaid, addressed to the addressee at the address as set forth above, (ii) delivered by hand or messenger to the addressee at the address set forth above; (iii) telecopied to the addressee as set forth above, with a hard confirmation copy being immediately sent through the United States Mail; or (iv) delivered for transmission to an expedited or overnight delivery service as Fedex.

15.5     <u>Compliance with All Applicable Laws</u>.  If notified by any government authority that it is in violation of any applicable law, rule, regulation, or other of such governmental authority relating to its business the Debtors or the Reorganized Debtors will comply with such law, rule, regulation, or order, <u>provided</u>, <u>however</u>, that nothing contained herein will require such compliance if the legality or applicability of any such requirement is being contested in good faith in appropriate proceedings.

15.6     <u>Duties to Creditors</u>.  No agent, representative, accountant, financial advisor, attorney, shareholder, officer, affiliate, member or employee of the Debtors or Reorganized Debtors will ever owe any duty to any Person (including any Creditor) other than the duties owed to the Debtors' bankruptcy Estate, for any act, omission, or event in connection with, or arising out of, or relating to, any of the following: (a) the Debtors' Bankruptcy Case, including all matters or actions in connection with or relating to the administration of the Estate; (b) the Pan, including the proposal, negotiation, confirmation and consummation of the Plan, or (c) any act or omission relating to the administration fo the Plan after the Effective Date.

15.7     <u>Binding Effect</u>.  The Plan will be binding upon, and will inure to the benefit of the Debtors, the Reorganized Debtors, the holders of the Claims or Liens, the holders of Interests, and their respective successors-in-interest and assigns.

15.8     <u>Governing Law, Interpretation</u>.  Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, the internal laws of the State of Texas will govern the construction and implementation of the Plan and any Plan Documents without regard to conflicts of law.  The Plan will control any inconsistent term or provision of any other Plan Documents.

15.9    Filing of Additional Documents.  On or before Substantial Consummation of the Plan, the Debtors may file with the Bankruptcy Court or any governmental authority such agreements, amendments, notices, certificates, and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

15.10    Computation of Time.  Bankruptcy Rule 9006 will apply to the calculation of all time periods pursuant to this Plan.  If the final day for any Distribution, performance, act, or event under the Plan is not a Business Day, then the time for making or performing such Distribution, performance, act, or event will be extended to the next Business Day.  Any payment or Distribution required to be made hereunder on a day other than a Business Day will be due and payable on the next succeeding Business Day.

15.11    Elections by the Debtors.  Any right of election or choice granted to the Debtors or Reorganized Debtors under this Plan may be exercised, at the Debtors' or the Reorganized Debtors' election, separately as to each Claim, Creditor or Person.

15.12    Release of Liens.    Except as otherwise expressly provided in this Plan or the Confirmation Order, all Liens against any of the Assets transferred to the Reorganized Debtors will be deemed to be released, terminated and nullified without the necessity of any order by the Bankruptcy Court other than the Confirmation Order.

15.13    Rates.  The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.

15.14    Compliance with Tax Requirements.    In connection with the Plan, the Debtors and Reorganized Debtors will comply with all withholding and reporting requirements imposed by federal, state and local Taxing Authorities and all Distributions under the Plan will be subject to such withholding and reporting requirements.  Notwithstanding the above, each holder of an Allowed Claim or Interest that is to receive a Distribution under the Plan has the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution under the Plan.

15.15    Default.  Upon default by the Reorganized Debtors, creditors (other than the Internal Revenue Service) are required to provide written notice of such Default to the Reorganized Debtors and their counsel William R. Davis, Jr. of Langley & Banack, Inc., by certified mail, return receipt requested, and by regular first class mail, and the Reorganized Debtors shall have thirty (30) days from the date of the notice to cure the default.  Any defect in such default notice shall toll the running of the thirty (30) day cure period.  Notice of default shall be given to the Reorganized Debtors and William R. Davis, Jr. If the Reorganized Debtors fail to cure within the thirty (30) day cure period provided herein, creditors shall be allowed to foreclose their liens/pursue collection activity allowed by applicable State law without further notice of hearing before the Court, and/or pursue available collection activities.

The United States (Internal Revenue Service) has requested the following default language:

(i)     The debt owed by the Debtors to the Internal Revenue Service is a non-dischargeable debt, except as otherwise provided for in the Bankruptcy Code, and that if the Debtors should default, the Internal Revenue Service is not subject to the provisions of the Bankruptcy Code so that the Internal Revenue Service can take whatever actions are necessary to collect said debt in the event of default; the federal tax liens survive the plan confirmation, a bankruptcy discharge, and dismissal of the case. The liens continue to be enforceable against all of the Debtors' property under federal law.

(ii)    A failure by the Reorganized Debtors to make a payment to the Internal Revenue Service pursuant to the terms of the Plan shall be an event of default, and as to the Internal Revenue Service, there is an event of default if payment is not received by the fifteen (15th) day of each month. If there is a default, the Internal Revenue Service must send written demand for payment, and said payment must be received by the Internal Revenue Service within fifteen (15) days of the date of the demand letter. These default provisions pertain to the entire claim(s) of the Internal Revenue Service, secured, unsecured priority, unsecured general, administrative priority and post-confirmation accrued tax. The Debtors are entitled to four (4) notices of default and opportunities to cure; a fifth default may not be cured.

(iii)    The Internal Revenue Service is bound by the provisions of the confirmed Plan and is barred under Section 1141 of the Bankruptcy Code from taking any collection actions against the Reorganized Debtors for pre-petition claims during the duration of the Plan (provided there is no default as to the Internal Revenue Service). The period of limitations on collection remains suspended under 26 U.S.C. Sec. 6503(h) for tax periods being paid under the Plan and terminates on the earlier of (1) all required payments to the Internal Revenue Service have been made; or (2) thirty (30) days after the date of the demand letter (described above) for which the Debtors failed to cure the default.

(iv)    The Internal Revenue Service also agrees to withhold collection activity against the trust fund recovery penalty assessment against any responsible officer (if any). Regarding any liability owing to the IRS which is addressed herein, whether now or later assessed against any responsible party, the IRS will withhold collection of this liability against any party held to be a responsible party as long as the Debtors herein are current on their obligations under the Plan. This agreement only encompasses the tax periods involved in the confirmed plan. The forbearance of collection efforts by the Internal Revenue Service does not preclude any action by the Internal Revenue Service to file liens or otherwise to perfect a security interest against the responsible officer as permitted under federal and state law. The period of limitations on collection will be suspended under 26 U.S.C. 603(h) for the trust fund periods and will terminate on the earlier of (1) all required payments to the Internal Revenue Service have been made under the Plan; or (2) thirty (30) days after the date of the demand letter (described above) for which the Debtors failed to cure the default.

(v)    Internal Revenue Service remedies upon default: Upon any final and non-curable default by the Reorganized Debtors, the Internal Revenue Service may accelerate its allowed pre- and post-petition claims (and any future administrative claims), and declare the outstanding amounts of such claims to be immediately due and owing. The Internal Revenue Service may pursue any and all available state and federal rights and remedies as provided by law without future order of this Court.

(vi)    Payments must be mailed to:
Internal Revenue Service
ATTN: Elizabeth Mason
300 E. 8th Street, M/S 5026 AUS
Austin, TX 78701

(vii)    <u>Agreement with the Internal Revenue Service</u>: The federal tax liens survive the Plan confirmation, a bankruptcy discharge, and dismissal of the case. The liens continue to be enforceable against the Reorganized Debtors' property to the extent, priority, and validity such liens were entitled to as of the Petition Date and under federal law. All liens will be timely released upon the completion of the payments to the Internal Revenue Service as set forth and required herein.

(viii)    The Debtors must remain current with respect to all post-petition federal tax liabilities, including the timely filing of tax returns and payment of all tax liabilities as required by applicable law during the term of the Plan. Failure to remain current with respect to one or more post-petition federal tax liabilities shall constitute an event of default to the Plan; however, the Bankruptcy Court shall have no jurisdiction over any tax issues arising after the date of confirmation. There will be no automatic stay or post-confirmation injunction with regard to federal tax liabilities accrued after the Petition Date (January 4, 2024), and the IRS shall be free to collect any such liabilities in accordance with the provisions of Title 26 of the United States Code and other applicable laws.

(ix)    To the extent the Debtors have made, or makes in the future, any overpayment of post-petition taxes, post-petition over payments of federal taxes may be setoff against any post-petition federal tax liabilities as allowed by applicable law. If the Debtors have not accrued any post-petition liability to the IRS, the overpayments will be applied to the Debtors' Plan payments under the Plan.

15.16    <u>Cure Period</u>. Except as otherwise set forth herein, the failure by the Debtors or the Reorganized Debtors to timely perform any term, provision or covenant contained in this Plan, or to make any payment or Distribution required by this Plan to any Creditor, or the failure to make any payment or perform any covenant on any note, instrument or document issued pursuant to this Plan, will not constitute an event of default unless and until the Debtors/Reorganized Debtors and their counsel have been given thirty (30) days written notice of such alleged default in the manner provided in this Plan, and provided

an opportunity to cure such alleged default. Until the expiration of such thirty (30) day cure period, the Debtors/Reorganized Debtors will not be in default, and performance during such thirty (30) day cure period will constitute conditions precedent to declaring or claiming any default under this Plan or bringing any action or legal proceeding by any Person to enforce any right granted under this Plan.

15.17. **Default.** In the event that payments are not made by the Debtors as required by the Plan and Confirmation Order, the holders of allowed claims in this case and other parties-in-interest shall have the right to either: (a) file a Motion to Dismiss or Convert this case to a case under Chapter 7 of the Bankruptcy Code; or (b) file a Motion seeking relief from the automatic stay, in the event the Debtors default on a payment to a secured creditor; or (c) file a Motion to appoint a Trustee. The payment and default provisions of this Confirmation Order shall supercede any prior orders entered herein with respect to adequate protection and relief from stay Motions. The Bankruptcy Court shall retain jurisdiction to determine all matters related to enforcement of the Plan and Confirmation Order.

15.18 **Additional Post-Confirmation Duties of the Sub V Trustee.** In addition to the duties set forth above and as set forth under 11 U.S.C. § 1183, duties of the Trustee include those relating to:

i. The right to appear and be heard in any post-confirmation hearing in relation to any issue arising within the post-confirmation affairs of the reorganized Debtors;

ii. Right to acquire required bonding, which costs are to be satisfied out of Debtors' Plan Payments under 11 U.S.C. § 1191(d);

iii. Right to take all steps necessary to ascertain allowed claim amounts, to prepare and issue claims recommendations and to obtain court determinations on amounts of allowed claims and distributions;

iv. Right to declare Plan in default and to issue demand to cure default and to take any other action necessary in the event of Plan default;

v. Right to file a Modified Plan in the event of an uncured default;

vi. Rights to liquidate all remaining assets, to collect accounts receivable, to pursue all avoidance actions or any other claims reserved for the post-confirmation estate upon default and failure to cure, upon motion and order of the Bankruptcy Court;

vii. Rights to pursue avoidance claims or any other prepetition claims or causes of action on behalf of the estate;

viii. Rights to pursue avoidance claims or any other prepetition claims or causes of action on behalf of the estate;

ix. Rights to require Debtors to file any tax returns, to provide accounting and financial information, and rights to access to Debtors' books and records;

x. Power to retain professionals with or without Court approval;

xi. Other matters reasonably necessary to ensure that the Plan Payments are made on a full and timely basis, and filing of a final report.

15.9    Reporting. The Sub V Trustee shall file all reports required by the United States Trustee in the manner prescribed by the United States in the manner prescribed by the United States Trustee Program. Upon the completion of the Plan, the Sub V Trustee shall file his final report and seek a discharge of his duties as Sub V Trustee. In conjunction with filing his final report, the Sub V Trustee will file a final Fee Application for post-confirmation fees.

# ARTICLE XVI

## EXHIBITS

A.    Liquidation Analysis
B.    Plan Projections
C.    Estimated List of Unsecured Creditors (Class 20)

Dated: April 3, 2024.

Jimmy Ray Lewis, Jr.

Dorina Joy Lewis

Date: April 3, 2024

Respectfully submitted,

*/s/ William R. Davis, Jr.*
WILLIAM R. DAVIS, JR.
State Bar No. 05565500
LANGLEY & BANACK, INCORPORATED
745 E. Mulberry, Suite 700
San Antonio, TX 78212
(210) 736-6600 - Telephone
(210) 735-6889 - Telecopier

Attorneys for Debtors