IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 24-50029-MMP |
| | § | |
| JIMMY RAY LEWIS, JR. AND | § | CHAPTER 11 |
| DORINA JOY LEWIS, | § | |
| | § | |
| DEBTORS | § | |
| | § | |
| PERFORMANCE FINANCE, | § | |
| | § | |
| MOVANT | § | |
| | § | |
| VS. | § | |
| | § | |
| JIMMY RAY LEWIS, JR. AND | § | |
| DORINA JOY LEWIS, | § | |
| | § | |
| RESPONDENTS | § | |

MOTION OF PERFORMANCE FINANCE FOR RELIEF FROM THE
STAY OF 11 U.S.C. §362 AND REQUEST FOR ADEQUATE PROTECTION
(2023 Polaris General XP 1000 Premium)

**NOTICE TO ALL PARTIES**

**THIS PLEADING REQUESTS RELIEF THAT MAY BE ADVERSE TO YOUR INTERESTS.**

**IF NO TIMELY RESPONSE IS FILED WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE, THE RELIEF REQUESTED HEREIN MAY BE GRANTED WITHOUT A HEARING BEING HELD.**

**A TIMELY FILED RESPONSE IS NECESSARY FOR A HEARING TO BE HELD.**

TO THE HONORABLE JUDGE OF SAID COURT:

      Comes now PERFORMANCE FINANCE, a secured creditor in the above proceeding, hereinafter called Movant, complaining of JIMMY RAY LEWIS, JR. and DORINA JOY LEWIS, Debtors, hereinafter called Respondents, and would show the Court that Movant should be granted

relief from the Stay now in effect for the following reasons and upon the following grounds:

1.

This is a Motion by a Secured Creditor to obtain the entry of an Order lifting Automatic Stay provided by §362 of the United States Bankruptcy Code and permitting Movant to obtain possession of its property and enforce its security interest through private foreclosure had the Stay not been imposed. JIMMY RAY LEWIS, JR. and DORINA JOY LEWIS are the Debtors in Chapter 11 proceedings.

2.

On or about September 24, 2022, DORINA JOY LEWIS executed a Promissory Note, Disclosure, and Security Agreement in favor of Movant for the purchase of one (1) 2023 Polaris General XP 1000 Premium bearing serial number 3NSGXP995PM451449. Movant holds a perfected security interest in and to said collateral.

3.

On January 4, 2024, Respondents filed a petition in bankruptcy under Chapter 11, thus placing an Automatic Stay on the property and prohibiting Movant from foreclosing its security interest in the collateral.

4.

Respondent's Proof of Claim 7-1 was filed January 25, 2024 for $26,593.03 and includes a copy of the Promissory Note, Disclosure, and Security Agreement executed September 24, 2022 and Performance Finance's Lien, Texas Certificate of Title. A copy of Proof of Claim 7-1 is attached hereto and marked as Exhibit 1.

5.

The contract is in default for the payment due October 24, 2023, and for all subsequent

payments at the rate of $551.66 per month. As of April 26, 2004, there is now due and owing to Movant by Respondents a payoff balance of $28,111.38 plus accrued interest as allowed by the contract.

6.

Respondents have not made or proposed adequate protection payments to Movant. Movant requests adequate protection payments to commence immediately.

7.

Respondents' nonpayment and delay are highly prejudicial to Movant due to the vulnerability of the collateral to economic depreciation and to physical depreciation through continued use of the collateral. Such depreciation leaves Movant in imminent danger of suffering irreparable harm through the collateral's loss of market value, for which Movant shall have no adequate remedy at law. Movant is thus deprived of Adequate Protection under 11 U.S.C. §361.

8.

Movant has been unable to verify insurance coverage to protect the collateral and Movant's interest therein, thereby jeopardizing Movant's security interest and forcing Movant to make further expenditures to protect itself. Movant is thus denied Adequate Protection under 11 U.S.C. §361. Debtors should be compelled to provide proof of coverage immediately.

9.

Movant estimates the average retail value of the collateral to be $21,855.00, such value recited by J.D. Power. A copy of the J.D. Power valuation is attached hereto as Exhibit 2.

10.

Respondents retain no equity in the property securing the debt to Movant. The collateral is not necessary for the reorganization or rehabilitation of the estate. Therefore, under 11 U.S.C.

§362(d)(2)(A)(B), the Automatic Stay should be lifted and Movant should be allowed to foreclose its security interest in the collateral.

11.

Movant has been forced by Respondents to retain legal counsel to protect its interest in this proceeding, and Respondents should be ordered to pay reasonable attorney's fees to Movant.

12.

As a result of the foregoing, Movant moves that the Court enter an Order lifting the Stay as provided by §362 of the U. S. Bankruptcy Code as to the Movant PERFORMANCE FINANCE, permitting the Movant to enforce its security interest had the Stay not been imposed.

13.

Movant requests that the Court, in its discretion, order that Rule 4001(a)(3) is not applicable so that Movant may immediately enforce and implement the order granting relief from the Stay, or, alternatively, to order that the Stay under Rule 4001(a)(3) is for a period less than 10 days.

WHEREFORE, PREMISES CONSIDERED, Movant prays that the foregoing requested relief be in all respects granted, and for such other and further relief, at law and in equity, to which Movant may be justly entitled.

Respectfully submitted,

LAWRENCE LAW FIRM

/s/ *Peter B. Dickens*
Peter B. Dickens
State Bar No. 05819500
Attorney for Creditor
112 East 4th Street
Houston, Texas 77007
(713) 864-8000
(713) 864-0179 facsimile
USB@LBandD.com

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served upon the parties listed in the attached Service Exhibit, including the Debtors, Attorney for Debtors, and the United States Trustee, all parties requesting notice and 10 largest unsecured creditors, by electronic filing or first-class United States Mail, postage prepaid, on May 8, 2024.

/s/ *Peter B. Dickens*
Peter B. Dickens

Page - 5
Lewis-24-50029-lrg

# SERVICE EXHIBIT

William R Davis Jr
Langley & Banack Inc
745 E Mulberry Ave Suite 700
San Antonio TX 78212

Jimmy Ray Lewis Jr
141 W Robindale
Bandera TX 78003

Dorina Joy Lewis
141 W Robindale
Bandera TX 78003

United States Trustee - SA12
US Trustee's Office
615 E Houston Suite 533
San Antonio TX 78205

Jeremy Shane Flannery
DOJ-US Trustee
615 E Houston Street Suite 533
San Antonio TX 78205

Brad W Odell
Mullin Hoard & Brown LLP
PO Box 2585
Lubbock TX 79408

Chandra Dianne Pryor
Bonial & Associates PC
14841 Dallas Parkway Suite 300
Dallas TX 75254

William P Weaver Jr
Attorney at Law
16607 Blanco Road #303
San Antonio TX 78232

Julie A Parsons
McCreary Veselka Bragg & Allen PC
PO Box 1269
Round Rock TX 78680

Christopher V Arisco
Padfield & Stout LLP
100 Throckmorton St Suite 700
Fort Worth TX 76102

**TOP 10 UNSECURED CREDITORS:**

Apple Card
11850 S Electrion Rd
Draper UT 84020

Bank of America
PO Box 982238
El Paso TX 79998

Credit One Bank
PO Box 31293
Salt Lake City UT 84131

FB&T Mercury
PO Box 4499
Beaverton OR 97076

LVNV Funding LLC
c/o Resurgent Capital Services
PO Box 10587
Greenville SC 29603-0587

Mercury Card Services
PO Box 70168
Philadelphia PA 19176-0168

Merrick Bank
PO Box 9201
Old Bethpage NY 11804

Shell Fleet Plus
PO Box 639
Portland ME 04104

The Home Depot
5800 South Corp Pl
Sioux Falls SD 57108

US Small Business Administration
PO Box 3918
Portland OR 97208-3918

| Fill in this information to identify the case: | |
|---|---|
| Debtor 1 Jimmy Lewis | |
| Debtor 2 Dorina Lewis (Spouse, if filing) | |
| United States Bankruptcy Court  Western District of Texas | |
| Case number: 24-50029 | |

**FILED**
U.S. Bankruptcy Court
Western District of Texas
1/25/2024
Barry D. Knight, Clerk

## Official Form 410
# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) **that you received.**

### Part 1: Identify the Claim

**1. Who is the current creditor?**
Performance Finance
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**
☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?
Performance Finance
Name
1515 W. 22nd St., Suite 100W
Oak Brook, IL 0523

Contact phone  732-749-2256
Contact email  ecf@carrusllc.com

Where should payments to the creditor be sent? (if different)
Performance Finance
Name
POB 5108

Oak Brook, IL 60523-5108

Contact phone  732-749-2256
Contact email  ecf@carrusllc.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one): _____

**4. Does this claim amend one already filed?**
☑ No
☐ Yes. Claim number on court claims registry (if known) _____  Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**
☑ No
☐ Yes. Who made the earlier filing? _____

Official Form 410                          Proof of Claim                              page 1


EXHIBIT 1

**Part 2:** **Give Information About the Claim as of the Date the Case Was Filed**

| | | |
|---|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ | |
| 7. **How much is the claim?** | $ 26593.03 | **Does this amount include interest or other charges?**<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>Money Loaned | |
| 9. **Is all or part of the claim secured?** | ☐ No<br>☑ Yes. The claim is secured by a lien on property.<br>**Nature of property:**<br>☐ Real estate.  If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim*.<br>☑ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:** Certificate of title<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:** $ _____<br>**Amount of the claim that is secured:** $ 26593.03<br>**Amount of the claim that is unsecured:** $ 00.00  (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:** $ _____<br><br>**Annual Interest Rate** (when case was filed) 8.99 %<br>☑ Fixed<br>☐ Variable | |
| 10. **Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ | |
| 11. **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ | |

Official Form 410              Proof of Claim              page 2

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply*: | **Amount entitled to priority** |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | $ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    1/25/2024
               MM / DD / YYYY

/s/ Jennifer Marshall

Signature

Print the name of the person who is completing and signing this claim:

Name: Jennifer Marshall
First name   Middle name   Last name

Title: Administrator

Company: Carrus LLC
Identify the corporate servicer as the company if the authorized agent is a servicer

Address: 25 Highland Park Village #100–199
Number   Street
Dallas, TX 75205
City   State   ZIP Code

Contact phone: 732–749–2256    Email: ecf@carrusllc.com



# PROMISSORY NOTE, DISCLOSURE AND SECURITY AGREEMENT

Performance Finance
A division of Evergreen Bank Group
P.O. Box 17879
Reno, NV 89511

| Borrower Name and Address | Co-Borrower or Co-Signer Name and Address | Dealer Name and Address |
|---|---|---|
| Dorina Joy Lewis<br>___unty Rd 482 ST<br>NORMANGEE, TX 77871 |  | Woods Cycle Country<br>1933 N INTERSTATE 35,<br>NEW BRAUNFELS, TX 78130 |

**PROMISE TO PAY:** You (meaning all borrowers, jointly and severally) promise to pay to the order of Performance Finance, a division of Evergreen Bank Group, any and all amounts due under this Promissory Note, Disclosure and Security Agreement ("Contract"), including, but not limited to, the principal amount shown below plus daily simple interest at the Contract interest rate of 8.99% from the date You sign this Contract until Your loan is paid in full. Interest will be charged on a daily basis of 1/365 beginning on the date hereof until all amounts owed on this Contract are repaid. You further agree to pay any Late Charge, Return Fee or other fees, costs or other charges provided for in this Contract. You agree to make regular monthly payments in U.S. Dollars in accordance with the payment schedule shown below. You may prepay all or any part of the unpaid principal balance without paying any penalty. If You prepay, we will not refund to You any portion of the finance charge.

**DESCRIPTION OF COLLATERAL:** To secure the payment and performance of the obligations arising under this Contract, Borrower grants Lender a security interest in the property described below ("Collateral")(as more fully described in the Additional Terms and Conditions of this Contract).

| | Year | Make and Model | Vehicle Identification Number |
|---|---|---|---|
| ☐ New<br>☑ Used | 2023 | POLARIS GENERAL GENERAL XP 1000 PREM - AVALANCHE GRAY | 3NSGXP995PM451449 |

THE ADDITIONAL TERMS AND CONDITIONS CONTAINED ON THE FOLLOWING PAGES ARE A PART OF THIS CONTRACT

## TRUTH-IN-LENDING DISCLOSURE

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | AMOUNT FINANCED<br>The amount of credit to you or on your behalf. | TOTAL OF PAYMENTS<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 8.99 % | $ 9,106.39 (e) | $ 30,613.13 | $ 39,719.52 (e) |

(e) means an estimate

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 72 | $551.66 | 10/24/2022 |

**Security Interest:** You are giving Us a security interest in the Collateral being purchased.
**Property Insurance:** You understand that You are required to purchase property insurance on the Collateral. You can buy this insurance through any person of Your choosing acceptable to Us (please see below for what could happen if You do not maintain such insurance).
**Late Charge:** If a payment is more than 10 days late, You will be charged five percent (5%) of the full amount of the scheduled payment.
**Prepayment:** If You pay off some, or all, of Your loan early, You will not have to pay a penalty and will not be entitled to a refund of any part of the finance charge already paid. See the Additional Terms and Conditions below regarding nonpayment, default, and any required prepayment in full before the scheduled date.

### ITEMIZATION OF AMOUNT FINANCED

| | | |
|---|---|---|
| 1. Cash Sale Price (including any accessories, extras and services) | $ 26,999.00 | (1) |
| 2. Sales Tax | $ 51.14 | (2) |
| 3. Total Down Payment = Net Trade-in $ 0.00 + Cash Down Payment $ 2,500.00 | | |
| Your Trade-in is a _____ | $ 2,500.00 | (3) |
| 4. Unpaid Balance of Cash Price (Amount paid on Your Account) (1+2 minus 3) paid to dealer | $ 24,550.14 | (4) |
| 5. Amounts Paid to Others on Your Behalf: | | |
| A. To: Public Officials For Title, License, Lien Fee and Registration Fees | $ 33.00 | |
| B. Other Charges: | | |
| For Accessories (If not included in Cash Sales Price) | $ 0.00 * | |
| For Warranty and Maintenance Products | $ 2,499.00 * | |
| For Other | $ $3,530.99 * | |
| Total Other Charges and Amounts Paid to Others on Your Behalf | $ 6,062.99 | (5) |
| 6. Amount Financed/Principal Amount (4+5) | $ 30,613.13 | (6) |

*Dealer may share in or receive a portion of these amounts.
A full written itemization of the amount financed is available upon request.

ADDITIONAL TERMS AND CONDITIONS AND SIGNATURE PAGE TO THIS CONTRACT CONTAINED ON FOLLOWING PAGES.

Multi-State Contract   Rev. 10-2021                                                          Application Number: 368503

## ADDITIONAL TERMS AND CONDITIONS

**ADDITIONAL TERMS AND CONDITIONS.** Please see below for additional terms and conditions. You are bound by these terms in the same manner as if they were printed on the first page of this Contract.

**SIGNATURE.** By signing this Contract, You agree to all terms of this Contract and request Us to issue the proceeds of this Note. You acknowledge receiving a copy of this Contract. You authorize Us to accept Your facsimile or electronic signature on this Contract. You agree that Your facsimile signature or electronic signature on this Contract will have the same legal force and effect as Your original signature, regardless of whether transmitted to Us through facsimile, electronic mail, scanned copy or other means, and regardless of whether Your assent to the terms of this Contract was made through the signing of this Contract, the use of keypad, mouse or other device to select an item, button, icon or similar act or action to indicate Your agreement and acceptance of the terms hereof.

**1. DEFINITIONS.** "You" or "Your" means each borrower and each other person or entity who agrees to pay this Note and therefore agrees to the terms of this Note. "We" or "Us" means Performance Finance, a division of Evergreen Bank Group, an Illinois-chartered bank, sometimes referred to as the "Lender" and including its successors and assigns. The terms, "Contract," "Agreement," and "Note" are used interchangeably herein and have the same meaning throughout this document.

**2. APPLICABLE LAWS.** The laws of the state where Lender's lien has been recorded applies as to matters regarding Lender's security interest in the Collateral. With respect to all other matters, including as to the rate of interest and other related fees due and owing under this Contract, the laws of the United States, including 12 U.S.C. §1831d, and the laws of the State of Illinois shall apply to the greatest extent permitted by applicable law.

**3. BORROWER PROMISES.** All Borrowers acknowledge that the obligation to repay this Contract is joint and several. All Borrowers acknowledge time is of the essence with this Contract and agree to make the payments required hereunder at the times required in this Contract. Each Borrower warrants that the information supplied to Lender in applying for credit and in the making of this Contract is true and correct; that the Collateral will only be used for personal, family or household purposes; that this Contract, and all signatures, are genuine in all respects; that all parties have the capacity to contract; that the Contract is duly executed with proper authority; that no Borrower has knowledge of any fact that would impair the validity of this Contract; and that the Collateral was sold to Borrower for his, her or its personal ownership and not for another person. By signing this Contract, the Borrowers reaffirm the acknowledgements contained in the application for credit submitted by Borrowers to Lender.

**4. PROTECTION OF COLLATERAL; LENDER'S LIEN.** You agree to pay Lender all You owe under this Contract even if the Collateral is damaged, destroyed or missing. You agree to keep the Collateral in good condition and repair. You agree not to remove the Collateral from the United States, and not to sell, gift, rent, lease or otherwise transfer any interest in the Collateral without Lender's express written permission. You agree to protect the Collateral from claims of third persons and not to grant any lien or encumbrance on the Collateral. You agree not to expose the Collateral to misuse or confiscation and to maintain the Collateral at the place identified as Borrower's address on Page 1 of this Contract unless Lender agrees otherwise. You will make sure Lender's security interest is perfected and a lien on the Collateral is shown on the title, or other documentation acceptable to Lender. You agree to provide all acts, things and writings as Lender may at any time request to protect or enforce its rights in the Collateral and other collateral. You will not do anything to defeat Lender's lien. You expressly authorize Lender, or Lender's agent, to take any action necessary to perfect Lender's security interest in the Collateral, including, without limitation, the filing of a UCC-1 Financing Statement with respect to the Collateral in your name and without further action by You. If Lender pays any repair bills, storage costs, taxes, fines, DMV fees or other charges on or for the Collateral, (although Lender is not required to do so on Your behalf) You agree to repay the amount when Lender asks for it.

**5. SECURITY INTEREST.** To secure the indebtedness evidenced by this Contract, You grant, assign and convey to Lender a purchase money security interest in the Collateral stated on the first page of this Contract and any of the following items that are purchased and financed in connection with this Contract: (a) any accessories, equipment, and replacement parts installed on or accompanying the Collateral (as may be more fully described in the Bill of Sale for the Collateral); (b) any insurance premiums and charges for service products returned to Lender; (c) any proceeds of insurance policies, service or GAP products on the Collateral; and (d) any proceeds from the sale of the Collateral (For purposes of this Contract, (a)-(d) are included in the term "Collateral"). The purchase money security interest is in addition to any other security interest or lien Lender holds or which you are required to provide as a condition of the Note. This secures payment of all amounts You owe on the Contract and on any transfer, renewal, or extension of this Contract. It also secures Your other agreements in this Contract. To the extent permitted by law, the Collateral under this Contract also secures Your other obligations to lender, whether now owing or incurred hereafter.

**6. PAYMENTS.** Unless otherwise specified by Lender in writing, all payments by You under this Contract must be mailed to the address specified in the billing statements sent to You by Lender. Additional payment options by telephone or online may be available to You, but Lender reserves the right to charge a convenience fee for the use of these payment channels. All payments received by 5:00 p.m Central Standard Time, Monday through Friday ("Business Day") will be credited to your account as of such Business Day. Payments received after 5:00 p.m. on any Business Day will be credited to Your account on the following Business Day. You understand and agree that all payments received by Lender will first be applied to accrued but unpaid interest, then to principal due on this Note and then to any Late Charges or other charges.

**7. TRUTH IN LENDING DISCLOSURES.** The amounts disclosed as "FINANCE CHARGE" and "TOTAL OF PAYMENTS" on the first page of this Contract have been computed on the assumption that all payments will be received on the exact scheduled due dates. If payments are made early, these amounts will decrease. Payments made after the due dates will increase these amounts. The amount of any increase or decrease will be reflected in the amount of the final payment, or may increase or reduce the number of payments necessary to pay the Contract in full. If You pay the loan in full or in part early, You will not be charged a penalty for such prepayment.

**8. LATE CHARGES AND OTHER CHARGES.** If we have not received the full amount of any payment by the end of ten (10) calendar days after it is due, You may be required to pay a late charge equal to five percent (5%) of the full amount of the scheduled payment ("Late Charge"). If any payment under this Agreement is made with a check, ACH transfer or other instrument that is dishonored for any reason, You agree to pay Us a returned item fee of Twenty-Five dollars ($25) in addition to any other amount or charges You may owe Us ("Return Fee"). Other charges and fees may apply for extensions, deferrals and other requests you make of us during the course of this loan.

**9. PHYSICAL DAMAGE INSURANCE.** You agree to have, and provide proof to Lender of, physical damage insurance covering loss or damage to the Collateral while any amounts owed by You under this Contract remain unpaid, showing Lender as "additional insured and loss payee." Such insurance shall have a deductible not greater than $1,000 and must be for not less than the actual value of the Collateral. You may obtain such insurance from any provider You choose acceptable to Us, in our reasonable discretion. You agree that We may, and You appoint us as Your attorney-in-fact to, endorse Your name on any check for insurance proceeds. If at any time during the term of this Contract You do not have physical damage insurance covering the Collateral, We may, if We decide, buy insurance which covers our interest only. We are under no obligation to buy insurance, but may do so if We desire. If We buy insurance, We will let You know what type it is and the charge You must pay. We may either ask for immediate payment from You for the cost of such insurance or may add the insurance premium(s) to the unpaid principal amount on this Contract, interest will be charged on the insurance premium(s) at the Annual Percentage Rate disclosed in this Contract, and You agree to pay the insurance premium(s) with interest in equal installments along with the payments shown on the payment schedule. You understand and agree that if We purchase any physical damage insurance, We will be acting in our interest only. You further understand and agree that the purchased insurance will not contain any liability coverages (including, without limitation, for bodily injury or property damage caused to others), will only cover our interest in the Collateral, may have deductible amounts different than those in Your provided insurance, and may be more expensive than equivalent insurance which You could buy on

Multi-State Contract   Rev. 10-2021

Application Number: 368503

Your own. You agree that We can purchase such insurance with coverage that will be retroactive to the date Your insurance terminated. You understand and agree that We may receive compensation or reimbursement in connection with such insurance. If the Collateral is lost or damaged, You agree that We can use any insurance settlement to repair the Collateral or to apply to Your debt, at our sole and absolute discretion. If any charge for required insurance is returned to Us, it may be credited to Your account or used to buy similar insurance or insurance which covers only our interest in the Collateral. Any refund on optional insurance or service/repair plan obtained by Us will be credited to Your account. Credits to Your account will be in the same manner as payments.

**10. DELAY IN ENFORCING RIGHTS; WAIVER.** To the greatest extent allowed by law, You waive presentment, demand for payment and notice of dishonor by Lender. Lender can delay or refrain from enforcing any of its rights under this Contract without losing them. For example, We may extend the time for making some payments without extending others. You agree not to send Us partial payments marked "paid in full", "with prejudice", "without recourse" or any similar restrictive endorsements. If You send these items to our address specified for payment, they shall not be deemed received and the endorsement will not be effective against Us even though We cash the checks on which such endorsements are contained.

**11. DEFAULT.** You will be in default under the Note or other parts of the Contract if any one or more of the following events occurs: (a) You fail to make a monthly payment within ten (10) calendar days of its due date or any other payment when due; (b) Lender reasonably believes You have provided Us false or misleading information in connection with this loan; (c) any Borrower or Co-signer dies or is declared incompetent; (d) You fail to pay or keep any other promise on any other loan You have with Us; (e) the Collateral is damaged or stolen; (f) You breach any agreement or covenant in this Contract; (g) You fail to obtain or maintain any insurance required under this Contract, (h) any Borrower or Co-signer institutes bankruptcy proceedings or any such proceedings are instituted against any Borrower or Co-Signer; or (i) Lender reasonably believes the prospects for payment of all amounts due on this Note are impaired or that the balance of payments due hereunder has become insecure in whole or in part.

**12. REMEDIES UPON DEFAULT.** If You do not pay Us as agreed or are otherwise in default, or if an event occurs substantially reducing the value of the Collateral, materially impairing Your prospects to pay under this Contract, We may, at our option, declare the entire unpaid principal amount immediately due and owing. You will, following such event, at our request, deliver the Collateral to a place We designate that is reasonably convenient to You. At our option following a default, in accordance with applicable law, We can repossess the Collateral from You subject to any right to cure default You may have. To take the Collateral, We can go on Your land or anywhere the Collateral is located so long as it is done peacefully. Unless obligated by applicable law, We may or may not give You notice of our intention to repossess. If there are any personal belongings in the Collateral such as clothing or tools, We may store them. However, We do not have to store them and will not be responsible for the items beyond what the law may require. Any accessories, equipment or replacement parts will remain with the Collateral. We may sell the Collateral at the time and place of our choosing at a private or public sale or through any broker, subject to applicable law.

**13. GETTING THE COLLATERAL BACK AFTER REPOSSESSION.** If We repossess the Collateral We will send You a notice of sale disclosing that You have the right to redeem the Collateral by paying the accelerated balance and other costs of repossession. Under certain circumstances, You may have the right to reinstate the account by paying past due amounts plus any late charges, the cost of taking and storing the Collateral and other expenses that We or our agents have incurred. We will use the net proceeds of the sale to pay all or part of Your debt. If You owe less than the net proceeds of sale, We will pay You the difference, unless We are required to pay it to someone else. If You owe more than the net proceeds of the sale, You will pay Us the difference between the net proceeds of the sale and what You owe when We ask for it. If You do not pay this amount when asked, We will charge interest on it. If You have wrongfully damaged the Collateral, You will be liable to Us for the damages.

**14. ATTORNEYS' FEES AND COLLECTION COSTS.** To the extent permitted by applicable law, if We hire an attorney other than our salaried employee to collect what You owe, You agree to pay our reasonable attorneys' fees, including any incurred in connection with any bankruptcy or appellate proceeding, and any court costs and out of pocket expenses, whether or not the suit is filed, plus interest on such sums at the highest rate allowed by law. Additionally, to the greatest extent permitted by applicable law, You agree to pay all fees and costs incurred by us related to any third-party collection firm We retain to collect any amounts that You owe to Us under this Contract, including, without limitation, any and all contingency or percentage-based fees charged by such firm. Furthermore, You agree to reimburse Us for any costs We incur, in our discretion, in collecting any amount owed under this Contract or in order to locate You or the Collateral in the event that We deem it necessary to retain a third-party for such services.

**15. CREDIT REPORTING.** You agree that We may request a consumer credit report in connection with Your application and in connection with any update, renewal, or extension of credit for which an application is made.

**16. NOTICE OF LIMITED AGENCY.** Neither the seller of the Collateral nor any other party has the authority to approve or to make this loan. None of these parties are our agent in connection with the sale of the Collateral You are purchasing with the proceeds of this loan. The dealer is only authorized to prepare the loan documents and to obtain Your signatures for Us. Neither the dealer nor any employee or agent of the dealer is authorized to make any agreements with You with respect to this Contract.

**17. WARRANTY DISCLAIMER.** You understand that Lender is not offering any warranties and that there are no implied warranties of merchantability, of fitness for a particular purpose, or any other warranties, expressed or implied by Lender, covering the Collateral.

**18. RELEASE OF LIEN.** Upon Your payment in full of the amounts due hereunder, We will release our lien, if any, on the Collateral. You are responsible for our costs and for any costs charged by any public officials for such release.

**19. CUSTOMER IDENTIFICATION.** To help the government fight terrorism and money laundering, We are required to obtain, verify and record information identifying each Borrower under this Contract. We will therefore ask for your name, address, date of birth and other information that will allow us to identify You. We may ask to see Your driver's license or other identifying documents.

**20. MISCELLANEOUS.** You agree to be bound by any document provided by Us that changes the terms and conditions of this Contract due to state or federal law requirements. Any change in the terms or conditions of this Contract must be in a writing signed by Lender. No oral changes are binding. You may not assign this Contract, or Your obligations hereunder, without our express prior written consent. We may assign this Contract in our sole discretion and any assignee shall be entitled to all of the rights and remedies of Lender hereunder. This Contract contains the entire Contract between You and Us. If any part of this Contract is invalid, all other parts of the Contract will remain valid.

ARBITRATION AND WAIVER. THIS ARBITRATION PROVISION SHALL NOT APPLY IN THE EVENT THAT THE PROVISIONS OF THE MILITARY LENDING ACT (10 U.S.C. § 987 ET SEQ.) APPLY TO EITHER THE BORROWER OR CO-BORROWER ON THIS CONTRACT. YOU SHOULD READ THIS ARBITRATION AND WAIVER PROVISION CAREFULLY. IT CONTAINS IMPORTANT INFORMATION ABOUT YOUR RIGHTS AND CERTAIN RIGHTS THAT YOU ARE GIVING UP IN CONNECTION WITH THIS CONTRACT. SPECIFICALLY, IF WE SO CHOOSE, YOU ARE AGREEING TO ARBITRATE ANY DISPUTE OR CLAIM BETWEEN YOU AND US IN CONNECTION WITH THIS CONTRACT, OR ANY TRANSACTION BETWEEN US ("CLAIM"), AND YOU ARE WAIVING THE RIGHT TO LITIGATE SUCH CLAIM IN COURT AND THE RIGHT TO HAVE A JURY RESOLVE ANY CLAIM BETWEEN US. ADDITIONALLY, YOU ARE AGREEING TO WAIVE YOUR RIGHT TO PARTICIPATE IN ANY CLASS ACTION LAWSUIT OR CLASS ACTION ARBITRATION IN CONNECTION WITH ANY CLAIM.

Either You or We may choose to have any Claim between us resolved by binding arbitration, regardless of whether such Claim relates to or arises in connection with this Contract or in any other transaction or circumstance between us, or whether such Claim is based in law, contract or equity. Such arbitration shall be conducted

Multi-State Contract  Rev. 10-2021                                                   Application Number: 368503

under the then in effect rules of the American Arbitration Association ("AAA"). You may get a copy of the rules of the AAA by calling the AAA at 1 800-778-7879 or by visiting the AAA's website at www.adr.org. We do not waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover collateral, to recover a deficiency balance, or by taking any other action permitted under this Contract. The arbitration shall be conducted by a single arbitrator at a location mutually agreeable to You and Us. The arbitrator shall apply applicable law, including applicable statutes of limitation. You and We agree that this Contract evidences a transaction in interstate commerce. This Arbitration and Waiver provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA") and not by any state arbitration law. The arbitrator's ruling shall be binding on both parties, subject to any appeal rights permitted by the FAA. Either party may enter judgment on the award in the highest local, state or federal court or before any administrative body. Arbitration may be elected by You by writing to Us at: Evergreen Bank Group, Attention: Legal Department, 1515 West 22nd Street, Suite 100W, Oak Brook, IL 60523. We may elect arbitration by writing to You at Your last filed address with Us. Either of us may elect to arbitrate even if an action has been filed in court, so long as no judgment has been rendered. The fees and costs of the arbitration, and any appeals of the arbitration, shall be allocated in accordance with the rules of the AAA; provided, however, that We will pay any fees or costs required in order for this Arbitration and Waiver provision to be enforceable. All Claims will be arbitrated on an individual basis and You hereby waive your right to participate in or have a Claim adjudicated in connection with any class action lawsuit or class action arbitration proceeding. This includes any counterclaims, crossclaims, interpleaders or other similar actions brought in connection with or as a result of the original Claim. Notwithstanding anything else contained in this Arbitration and Waiver provision, in the event that Your Claim would fall in the jurisdiction of a small claims court, You may file your Claim in such court, but any appeal of such Claim will be subject to the terms of this provision. This arbitration provision shall survive termination or expiration of this Contract. If any part of this arbitration provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this arbitration provision shall be unenforceable.

You may elect to opt out of the provisions of this Arbitration and Waiver provision by mailing Us a written notice of Your election at Evergreen Bank Group, Attn: Loan Operations, 1515 W. 22nd Street, Suite 100W, Oak Brook, IL 60523 ("Election"). The Election should include or reference this Contract and provide Us with adequate information to identify You. In order to be effective, the Election must be signed by the Borrower and all Co-Borrowers and must be received by Us no later than thirty (30) calendar days following the date on the first page of this Contract. If You do not send an Election to Us within such period, this Arbitration and Waiver provision shall be effective as of the date of this Contract.

**Notice: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE BORROWER COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE BORROWER SHALL NOT EXCEED AMOUNTS PAID BY THE BORROWER HEREUNDER.**

Do not sign this Contract before You read it. You are entitled to a copy of this Contract. You may, at any time, prepay the unpaid balance of this Contract. In the event that any Co-Borrower listed below has not received title to the Collateral or is deemed to be a guarantor under applicable law, then the parties agree that such Co-Borrower shall be deemed a Co-signer on this Contract.

**CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS ENTIRE CONTRACT BEFORE YOU SIGN IT.**

**THE UNDERSIGNED ACKNOWLEDGE THAT THEY UNDERSTAND AND AGREE TO ALL TERMS OF THIS CONTRACT, INCLUDING, WITHOUT LIMITATION THE ARBITRATION CLAUSE CONTAINED HEREIN.**

**BY SIGNING BELOW YOU ACKNOWLEDGE RECEIPT OF ALL PAGES OF THIS CONTRACT AND AFFIRM THAT THIS CONTRACT WAS COMPLETELY FILLED IN BEFORE SIGNING. ANY CO-SIGNER ACKNOWLEDGES RECEIPT OF THE CO-SIGNER NOTICE CONTAINED HEREIN OR ATTACHED HERETO.**

| Borrower's Signature | Date 9/14/22 | Co-Borrower's Signature | Date |
|---|---|---|---|

Multi-State Contract   Rev. 07-2020

Upon sale of this vehicle, the purchaser must apply for a new title within 30 days unless the vehicle is purchased by a dealer. Until a new title is issued, the vehicle record will continue to reflect the owner's name listed on the current title. SEE BACK OF TAB FOR ADDITIONAL INFORMATION.



012718 - 014621

PERFORMANCE FINANCE
PO BOX 18887
RENO, NV 89511-0289

0
2
1
9
1
9

↓ DETACH HERE ↓



## TEXAS CERTIFICATE OF TITLE

TEXAS DEPARTMENT OF MOTOR VEHICLES

TxDMV          167392765

| VEHICLE IDENTIFICATION NUMBER | YEAR MODEL | MAKE OF VEHICLE | BODY STYLE |
|---|---|---|---|
| 3NSGXP995PM451449 | 2023 | POLA | MV |

TITLE/DOCUMENT NUMBER: 04630044837141947
DATE TITLE ISSUED: 10/13/2022

MODEL: G23

PREVIOUS OWNER: WOODS CYCLE COUNTRY NEW BRAUNFE TX

OWNER:
DORINA JOY LEWIS
CR 482
NORMANGEE, TX 77871

REMARK(S): OFF-HIGHWAY USE ONLY

X _____
SIGNATURE OF OWNER OR AGENT MUST BE IN INK

UNLESS OTHERWISE AUTHORIZED BY LAW, IT IS A VIOLATION OF STATE LAW TO SIGN THE NAME OF ANOTHER PERSON ON A CERTIFICATE OF TITLE OR OTHERWISE GIVE FALSE INFORMATION ON A CERTIFICATE OF TITLE.

DATE OF LIEN: 09/24/2022
1ST LIENHOLDER: PERFORMANCE FINANCE
PO BOX 18887
RENO, NV 89511

IT IS HEREBY CERTIFIED THAT THE PERSON HEREIN NAMED IS THE OWNER OF THE VEHICLE DESCRIBED ABOVE WHICH IS SUBJECT TO THE ABOVE LIENS.

RIGHTS OF SURVIVORSHIP AGREEMENT
WE, THE MARRIED PERSONS WHOSE SIGNATURES APPEAR HEREIN, HEREBY AGREE THAT THE OWNERSHIP OF THE VEHICLE DESCRIBED ON THIS CERTIFICATE OF TITLE SHALL FROM THIS DAY FORWARD BE HELD JOINTLY, AND IN THE EVENT OF DEATH OF ANY OF THE PERSONS NAMED IN THE AGREEMENT, THE OWNERSHIP OF THE VEHICLE SHALL VEST IN THE SURVIVOR(S).

FORM 30-C REV. 05/2016     DO NOT ACCEPT TITLE SHOWING ERASURE, ALTERATION, OR MUTILATION.

**LIMITED POWER OF ATTORNEY**

Evergreen Bank Group d/b/a FreedomRoad Financial and Performance Finance (the "Company"), hereby authorizes Carrus Portfolio Services LLC to be the Company's attorney in fact to execute and file proofs of claim on the Company's behalf and other such documents necessary to protect the interests of the Company in any bankruptcy proceeding regarding any loan referred by the Company to Carrus Portfolio Services LLC that the Company currently owns, holds, services, sub-services or is acting trustee on behalf of another entity. Such documents shall include, without limitation: (a) Proofs of Claim and Transfers of Claim under 11 U.S.C. Sections 501-502, Federal Bankruptcy Rules 3001-3003, and applicable local bankruptcy rules; and (b) Notices of Change of Address. This Limited Power of Attorney shall remain in effect until notice of revocation is provided by the Company.

IN WITNESS WHEREOF, Evergreen Bank Group d/b/a FreedomRoad Financial and Performance Finance has caused this Limited Power of Attorney to be executed by its duly authorized representative the 24th day of July, 2018.

Evergreen Bank Group d/b/a FreedomRoad
Financial and Performance Finance

By: _____

Claud Argall, VP-Collections & Customer Service

STATE OF NEVADA
COUNTY OF WASHOE

On the 24th day of July in the year 2018 before me, the undersigned, a Notary Public in and for the State of Nevada, personally appeared Claud Argall, known to be or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

Notary Public _____
Notary Public, State of __NEVADA__
Commission Expires __05/19/2019__

MARILOU Z. BAKER
Notary Public - State of Nevada
Appointment Recorded in Washoe County
No: 15-1737-2 - Expires May 19, 2019

# J.D. POWER 

## 2023 Polaris General XP 1000 Premium Pricing

## Pricing & Values

Add Options     Info & Definitions

| | |
|---|---|
| **Suggested List Price (MSRP)** ⓘ | **$26,999** |
| Base Price | $16,610 |
| Options | N/A |
| **Low Retail Value** ⓘ | **$16,610** |
| Base Price | $21,855 |
| Options | N/A |
| **Average Retail Value** ⓘ | **$21,855** |

Advertisement

